UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

OSCAR DOZIER, individually on behalf
of himself and other similarly situated
employees,

        Plaintiff,

v.                                  Case No. 3:18-cv-972-J-39MCR

DBI SERVICES, LLC., a Foreign Limited
Libaility Company,

        Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff's Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members and Incorporated Memorandum of Law (Doc. 20; Motion) and Defendant's Opposition thereto (Doc. 27; Opposition).

### I.  Background

Plaintiff, Oscar Dozier, initiated this action by filing the Collective Action Complaint and Demand for Jury Trial (Doc. 1; Complaint) against Defendant, DBI Services, LLC under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Compl. at 1. Plaintiff brought the Complaint on behalf of himself and other similarly-situated employees, seeking to recover overtime compensation, liquidated damages, attorney's fees, and costs, and declaratory relief for Defendant's alleged failure to compensate him at the statutory rate of one and one-half times his regular rate of pay for any overtime hours worked. Id. ¶¶ 1, 37, 46.

Plaintiff alleges that he "worked for Defendant as non-exempt 'On Call' Technician" performing "general maintenance of highways and roadways." Id. ¶¶ 21, 23. "Plaintiff's duties included cleaning drainage structures, repairing fences and road signs, and removing debris from roadways." Id. ¶ 24. Defendant provided Plaintiff with a company vehicle, which Plaintiff was required to take home to assist with "on-call" work. Id. ¶¶ 25–26. Plaintiff alleges that each workday, before and after operating the company vehicle, he was required to complete Defendant's "Daily Vehicle Inspection Report" ("DVIR"). Id. ¶¶ 27–28; see also (Doc 20-13; DVIR). The DVIR required Plaintiff to inspect 40 items twice per day. See id. ¶¶ 29, 32. Each inspection took at least 20 minutes to complete. Id. ¶ 33. Plaintiff took the company vehicle home and was required to conduct the inspection before clocking in and after clocking out from Defendant's facility. Id. ¶¶ 31, 34. As a result, Plaintiff alleges that he was required to work approximately 40 minutes off-the clock each workday and that he worked in excess of 40 hours in most workweeks throughout his employment with Defendant. See id. ¶¶ 35–36.

## II.   Standard of Law

An action to recover unpaid overtime compensation under the FLSA "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The purpose of such a collective action is "to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." Prickett v. Dekalb County, 349 F.3d 1294, 1297 (11th Cir. 2003). "To maintain an opt-in class action under § 216(b), plaintiffs must demonstrate that they are 'similarly situated.'" Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217 (11th

Cir. 2001). "[P]laintiffs need show only that their positions are similar, not identical, to the

positions held by the putative class members." Id. (internal quotation marks and citations

omitted). In determining whether employees are similarly situated, a "district court should

satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly

situated' with respect to their job requirements and with regard to their pay provisions."

Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991).

     To determine similarity, the Eleventh Circuit has suggested a two-step approach

to certification. Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008).

The first step is "the notice stage" also referred to as the "conditional certification." Id. at

1260-61.[1]

> "At the notice stage, the district court makes a decision-usually based only
> on the pleadings and any affidavits which have been submitted-whether
> notice of the action should be given to potential class members. Because
> the court has minimal evidence, this determination is made using a fairly
> lenient standard, and typically results in 'conditional certification' of a
> representative class. If the district court 'conditionally certifies' the class,
> putative class members are given notice and the opportunity to 'opt-in.' The
> action proceeds as a representative action throughout discovery."

Vondriska v. Premier Mortg. Funding, Inc., 564 F. Supp. 2d 1330, 1333-34 (M.D. Fla.

2007) (quoting Hipp, 252 F.3d at 1218). To determine whether a class should be

conditionally certified, the Court uses a "fairly lenient standard." Id. at 1334; see also

Morgan, 551 F.3d at 1261 (stating that although the standard for satisfying the first step

is "'not particularly stringent,'" "there must be more than 'only counsel's unsupported

assertions that FLSA violations [are] widespread and that additional plaintiffs would'" opt-

---

[1] The second step "is triggered by an employer's motion for decertification." Morgan, 551
F.3d at 1261. Accordingly, for purposes of the instant Motion, the Court need only engage in the
first step of the analysis.

in) (quoting Hipp, 252 F.3d at 1214; Haynes v. Singer Co., 696 F.2d 884, 887 (11th Cir.

1983)). It is the plaintiff's burden to show "a 'reasonable basis' for his claim that there are

other similarly situated employees." Morgan, 551 F.3d at 1260. While the two-step

approach has been suggested by the Eleventh Circuit, the ultimate "decision to create an

opt-in class under § 216(b) . . . remains soundly within the discretion of the district court."

Hipp, 252 F.3d at 1219.

## III.   Discussion

Plaintiff requests that the Court grant conditional certification for the following class

of individuals:

> All hourly-paid Technicians who work/worked for DBI Services, LLC
> companywide within the last three years who were/are required to complete
> DBI's "Daily Vehicle Inspection Report" inspection and/or related work
> before clocking-in and/or after clocking-out for their scheduled shifts in
> weeks where they worked over forty hours and were/are therefore not
> compensated at one and one-half times their regular rate of pay for all hours
> worked in excess of 40 hours in one or more workweeks as required by the
> FLSA.

Motion at 2. Plaintiff argues that the putative class is limited to technicians "who are

similarly situated in regard to the method of their compensation and subject to DBI's

common scheme and policy that is uniformly applied to all members of the defined

putative class . . . ." Id. In support, Plaintiff provides five declarations from DBI technicians

who were compensated on an hourly basis and required to complete the DVIRs before

and after operating any DBI vehicle. See (Doc. 20-7 ¶¶ 3–9; Carter Declaration); (Doc.

20-8 ¶¶ 3–9; Corley Declaration); (Doc. 20-9 ¶¶ 3–9; Dickerson Declaration); (Doc. 20-

10 ¶¶ 3–9; Dozier Declaration); (Doc. 20-11 ¶¶ 3–9; Kelly Declaration).

Plaintiff states that DBI is a third-party infrastructure contracting company that

provides maintenance and operation services nationwide and in Europe. See Motion at 2

- 4 -

(citing Doc. 20-3). Plaintiff represents that during DBI's annual meeting, DBI conducted uniform training for companywide technicians, also known as drivers, which required them complete DVIR training. See id. at 3 (citing Dickerson Decl. ¶ 29). Plaintiff argues that DBI advised its technicians that the failure to properly complete DVIRs could cost the technicians their jobs. See id. (citing Carter Decl. ¶ 10; Corley Decl. ¶ 10; Dickerson Decl. ¶¶10–11).

Plaintiff argues that DBI required its technicians to load their trucks to be prepared to depart DBI's shop by the technicians' scheduled work time. See id. at 4 (citing Carter Decl. ¶ 16; Corley Decl. ¶ 17; Dickerson Decl. ¶ 18; Dozier Decl. ¶¶ 18–19; Kelly Decl. ¶¶ 16–17). Plaintiff argues that the technicians were not compensated for the mandatory pre-shift work. See id. Plaintiff also argues that DBI required its technicians to clock-in and clock-out at their scheduled hours worked, rather than their actual hours worked. Id. at 3–4 (citing Carter Decl. ¶¶ 16–18; Corley Decl. ¶¶ 16–18; Dickerson Decl. ¶¶ 16–19; Dozier Decl. ¶¶ 16–19; Kelly Decl. ¶¶ 16–18). Plaintiff argues that DBI employs technicians nationwide with similar job descriptions. Id. at 2–3 fn.1 (citing Docs. 20-12 and 20-15 (DBI technician job descriptions across 14 states)).

In addition to Plaintiff, to date four other DBI technicians joined this lawsuit and represent that they know other DBI technicians who would be interested in joining. See id. at 6 (citing Carter Decl. ¶ 29; Corley Decl. ¶ 31; Dickerson Decl. ¶ 31; Dozier Decl. ¶ 29; Kelly Decl. ¶ 29). Plaintiff represents that DBI has been involved in two prior class action lawsuits concerning overtime compensation. See id. (citing Baker v. DBI Services, LLC, No. 2014 CA 003512 (Fla. Cir. Ct. Duval County May 20, 2014); Stack v. DeAngelo Brothers, Inc., No. 1:17-cv-11006-RWZ (D. Mass. May 31, 2017)).

In its Opposition, Defendant argues that Plaintiff's declarations are from former employees from one project—the Duval County, Florida Project, and DBI no longer has an asset maintenance contract for that job site. See Opp. at 2 (citing Doc. 27-2 ¶ 9; Robinson Affidavit). Defendant also argues that not all job descriptions in Exhibit O (Doc. 20-15) require the DBI technician to take the DBI vehicle home for purposes of being on call. See id. at 2–3. DBI provides affidavits from 5 technicians who worked on the Duval County Project who stated that they conducted or instructed other employees to conduct vehicle inspections while on the clock. See id. at 4–6 (citing (Doc. 27-3 ¶ 6; Wirz Affidavit); (Doc. 27-4 ¶ 9; Hinkley Affidavit); (Doc. 27-5 ¶ 9; Dunbar Affidavit); (Doc. 27-7 ¶ 8; Joyner Affidavit); (Doc. 27-8 ¶ 9; Lathers Affidavit)).[2]

Considering the fairly lenient standard, the 4 opt-in plaintiffs, and the 5 declarations, the Court finds that Plaintiff has satisfied his burden of demonstrating a reasonable basis for his claim that there are other similarly situated technicians. See Teahl v. The Lazy Flamingo, Inc., No. 2:13-CV-833-FTM-38CM, 2015 WL 179367, at *6 (M.D. Fla. Jan. 14, 2015) ("Upon consideration of the lenient standard, two opt-in plaintiffs, and . . . declaration, there is a reasonable basis to believe there are other employees who may desire to opt-in."). The DBI technicians are trained at the same annual meeting and complete the same DVIRs on the DRI vehicles. Moreover, the

---

[2] Curiously, Defendant represents that a sixth technician, Bruce McGriff, "conducted all vehicle inspections once he clocked in with DB[I] for the day and before he clocked out for the day." See Opp. at 5 (citing Doc. 27-6; McGriff Affidavit). However, upon review of Mr. McGriff's Affidavit, it appears that typed language was crossed out and handwritten language was provided stating that Mr. McGriff "conduct[ed] [his] pre-trip vehicle inspection at [his] residence and [his] post-trip inspection at the shop" before he clocked out for the day. See McGriff Aff. ¶ 9. Mr. McGriff's signature is included at the end of the Affidavit. See McGriff Aff. at 2. It remains unclear whether Mr. McGriff was on the clock and thus being compensated for the pre-trip inspections conducted at his residence.

technicians are paid hourly and are required to keep track of their scheduled work. At this

stage, Plaintiff has sufficiently shown that the proposed class is similarly situated to him.

While the Court does not consider the merits of Defendant's factual arguments at this

stage, Defendant failed to defeat Plaintiff's contention that Plaintiffs are similarly situated.[3]

With the additional information explained below included in the Notice, the Court

will allow Plaintiff to mail, email, and post at DBI's locations in a conspicuous place where

putative class members are likely to see it[4] the proposed Notice (Doc. 20-1) and Consent

Form (Doc. 20-2).[5] The Notice shall specify a 90-day opt-in period,[6] to the following class:

---

[3] The Court also rejects Defendant's argument that the Motion is due to be denied for failing to comply with the 90-day requirement in Rule 4.04(b), Local Rules, United States District Court, Middle District of Florida. See Opp. at 16. While Plaintiff did not file the Motion within 90 days after filing the Complaint, the parties previously agreed to stay discovery and outstanding deadlines until the Court resolved Defendant's Motion to Dismiss (Doc. 12) and the instant Motion for Conditional Certification (Doc. 20). See (Doc. 19); see also (Doc. 31; Order granting (Doc. 19) and staying the deadlines in this case); (Doc. 32 and 35; Orders denying the Motion to Dismiss (Doc. 12)). The parties are cautioned to adhere to all Federal Rules of Civil Procedure and Local Rules. However, under the specific procedural posture of this case and the parties' agreed upon motion to stay, the Court finds that the Motion is not due to be denied based timeliness.

[4] See e.g., Scheall v. Nicaea Acad., Inc., No. 2:14-CV-653-FTM-29DN, 2015 WL 3991041, at *3 (M.D. Fla. June 30, 2015) (finding that requests to post notices at the defendants' locations "are routinely granted and the Court sees no reason to divert from that standard practice in this case." (citing Fiore v. Goodyear Tire & Rubber Co., No. 2:09-CV-843, 2011 WL 867043, at *4 (M.D. Fla. Mar. 10, 2011)).

[5] Plaintiff also requests that the Court permit Plaintiff to send text message notices to putative class members. See Motion at 21–22 (collecting cases outside this district). At this juncture, the Court in its discretion finds it unnecessary to permit Plaintiff to send Notices and/or Consent Forms via text message to putative opt-in plaintiffs. Plaintiff failed to provide a proposed text message, nor has Plaintiff argued that Defendant commonly used text messages to communicate with its technicians. See e.g., Kiley v. MedFirst Consulting Healthcare Staffing, LLC, 297 F. Supp. 3d 1260, 1268 (N.D. Ala. 2018) (denying the plaintiffs' request to send notices via text message and stating its concern that "a text message notice could be incomplete and might not convey the seriousness of the communication."). Plaintiff's request to send the Notice and Consent Form via text message is denied.

[6] The opt-in period as proposed has been left blank See Notice at 4. However, Plaintiff requests 90 days for class members to opt-in. See Motion at 24.

> All hourly-paid Technicians who work/worked for DBI Services, LLC companywide within the last three years who were/are required to complete DBI's "Daily Vehicle Inspection Report" inspection and/or related work before clocking-in and/or after clocking-out for their scheduled shifts in weeks where they worked over forty hours and were/are therefore not compensated at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in one or more workweeks as required by the FLSA.

In the interest of full disclosure to the potential class members who will receive the Notice, the Court directs Plaintiff to add the following information to the Notice:

1. Defense counsels' name and contact information.

2. If the potential class members opt-in, they may be required to appear in the Middle District of Florida, Jacksonville Division.

3. Defendant may attempt to recover its costs from the potential class members if there is no judgment in Plaintiff's favor and the Court concludes that Plaintiff litigated in bad faith.

4. The potential class member may retain or consult counsel of his or her choosing before agreeing to join this lawsuit.

See e.g., Gonzalez v. TZ Ins. Sols., LLC, No. 8:13-CV-2098-T-33EAJ, 2014 WL 1248154, at *5 (M.D. Fla. Mar. 26, 2014) (directing the parties to work together to revise the notice and include the defense counsel's name and contact information, that if recipients opt-in they may be required to appear for trial, and if the plaintiffs are unsuccessful the defendant insurance company may attempt to recover its costs from the potential class members); Czopek v. TBC Retail Grp., Inc., No. 8:14-CV-675-T-36TBM, 2015 WL 4716230, at *11 (M.D. Fla. Aug. 7, 2015) (revising the notice to include information that the potential class members may be called to physically appear in court in the Middle District of Florida, that they may be liable for attorneys' fees and costs if there is no judgment in their favor, and

that they may retain or consult counsel of their choosing before agreeing to join the lawsuit). The Court directs parties to work together to revise the Notice to include the missing information.

Plaintiff requests permission to mail reminder notices to the putative class members at the half-way point in the notice period. See Motion at 23–24. Plaintiff has not filed a proposed reminder notice for the Court to review. The Court directs Plaintiff to file a proposed reminder notice and will give Defendant an opportunity to file objections to such proposal. The Court encourages the parties to work together to create a jointly proposed reminder notice.

As explained in more detail below, the Court directs Defendant to produce (electronically and in hard copy) a complete list with the names, last known home addresses, telephone numbers, dates of employment, and e-mail addresses of all persons, as described in the Notice within the past three years, since August 10, 2015.[7] Plaintiff, through his counsel, shall transmit the Notice and Consent Form to all putative class members after Defendant complied with its production obligations.

Accordingly, after due consideration, it is

**ORDERED:**

1.    Plaintiff's Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members and Incorporated Memorandum of Law (Doc. 20) is **GRANTED** as described herein.

---

[7] Plaintiff also requests that the Court order Defendant to produce putative class members' social security numbers. See Motion at 26. At this juncture, the Court finds that the production of social security numbers is unnecessary. If Plaintiff has difficulty locating putative class members without their social security numbers, Plaintiff may petition the Court at a later time and pursuant to the Federal Rules of Civil Procedure to order Defendant to produce the social security numbers.

2.      The following schedule shall govern this case:

a.  On or before **March 10, 2020**, Plaintiff shall file a proposed reminder notice. On or before **March 24, 2020**, Defendant may file objections to Plaintiff's proposed reminder notice postcard. Alternatively, on or before **March 10, 2020**, the parties may file a proposed joint reminder notice indicating that Defendant has no objections to the reminder notice.

b.  Defendant shall produce to Plaintiff (electronically and in hard copy) no later than **March 24, 2020**, a complete list with the names, addresses, telephone numbers, dates of employment, and e-mail addresses of all hourly-paid technicians who work/worked for DBI Services, LLC companywide within the last three years since August 10, 2015, the date the Complaint was filed, who were/are required to complete DBI's Daily Vehicle Inspection Report inspection and/or related work and were not paid overtime premiums for overtime hours worked.

c.  Plaintiff shall transmit the Notice and Consent Form to potential class members no later than **April 24, 2020**.

d.  Potential class members shall opt-in no later than **July 24, 2020**.

3.      In light of the schedule and the Court's Order (Doc. 31 at 3), on or before **March 3, 2020**, the parties shall file a joint status report.

**DONE** and **ORDERED** in Jacksonville, Florida this 24ᵗʰ day of February, 2020.

BRIAN J. DAVIS
United States District Judge

- 10 -

5

Copies furnished to:

Counsel of Record
Unrepresented Parties