# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**OSCAR DOZIER**, individually on
behalf of himself and other similarly
situated employees,

      Plaintiff,

                                       CASE NO.  3:18-cv-972-J-39MCR

v.

                                       **JURY DEMAND**

**DBI SERVICES, LLC**. a Foreign
Limited Liability Company,

      Defendant.

_____/

## <u>JOINT MOTION TO APPROVE FLSA SETTLEMENT</u>

Plaintiff, Oscar Dozier, and Defendant, DBI Services, LLC, (collectively the "Parties") have reached a settlement in this lawsuit.  *See* Settlement Agreement, attached as **Exhibit** ("Ex.") **A**.  Accordingly, the Parties file this Joint Motion to Approve Settlement and jointly ask the Court to enter a final order approving the settlement of this action pursuant to 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA"), and dismissing this case with prejudice, while retaining jurisdiction to enforce the terms of the Parties' settlement.

## BRIEF IN SUPPORT OF JOINT MOTION TO APPROVE SETTLEMENT

### A.    Background and Procedural History

The Court is well-aware of the background and procedural history concerning this FLSA collective action lawsuit, which has been the subject of extensive litigation over the past three years.  *See* ECF Nos. 1 – 116, generally.  On August 10, 2018, Plaintiff, Oscar Dozier, filed this FLSA Collective Action lawsuit against his former employer, DBI Services, LLC.  *See* ECF No. 1.  There, Plaintiff alleges that he worked for Defendant as an on-call Technician, was compensated on an hourly basis, and was required to complete a Daily Vehicle Inspection and corresponding report ("DVIR") that took at least twenty (20) minutes to complete, off-the-clock, which led to unpaid overtime wages, in violation of the FLSA.  *Id.*  On September 11, 2018, Defendant moved to dismiss the Complaint. ECF No. 12.  On April 1, 2019, Plaintiff filed his Motion to Conditionally Certify

the Collective Action.  *See* ECF No. 20.  On July 3, 2019, Magistrate Judge Richardson entered a Report and Recommendation denying Defendant's Motion to Dismiss.  *See* ECF No. 32.  On July 17, 2019, Defendant filed an Objection to the Report and Recommendation.  *See* ECF No. 33.  On August 6, 2019, the Court overruled Defendant's Objections.  *See* ECF No. 35.

On August 15, 2019, Defendant filed its Answer to Plaintiff's Complaint. *See* ECF No. 36.  Defendant denies the allegations set forth in Plaintiff's Complaint, and denies that Plaintiff was required to, or did, work off-the-clock. While Defendant indicates that it compensated the Plaintiff for the time he took to complete his DVIR inspections and reports, Defendant also asserts as an affirmative defense that it is not required to compensate the Plaintiff for the time it took him to complete the DVIRs either way because these activities are exempt from the FLSA's overtime payment requirement and are *de minimis* and non-compensable preliminary and postliminary activities as a matter of law.  *Id.*  In addition, Defendant asserts as an affirmative defense, *inter alia*, that it acted in good faith to avoid the imposition of willfulness damages, that Plaintiff is not entitled to liquidated damages, that the claims are time barred, and that the putative class members are not similarly-situated.

On February 24, 2020, the Court Granted Plaintiff's Motion to Certify the collective action on behalf of "all hourly-paid technicians who work/worked for

DBI Services, LLC companywide within the last three years since August 10, 2015, the date the Complaint was filed, who were/are required to complete DBI's Daily Vehicle Inspection Report Inspection and/or related work and were not paid overtime premiums for overtime hours worked." ECF No. 37, p. 10. Ultimately, 416 Opt-in Plaintiffs filed their consent to join, 10 of which later withdrew their consent to join form. *See* Docket, generally.

Thereafter, the Parties participated in discovery, which includes the production of **over 47,000 documents** and depositions of the named Plaintiff and certain Opt-in Plaintiffs. Ultimately, the Parties mediated this matter before Hunter Hughes, Esq., a well-respected class action mediator, on February 24, 2021. The matter, however, was not resolved at that time.

Thereafter, the Parties continued to discuss a potential resolution, and continued to exchange discovery.[1] Preliminarily, the Parties attempted to informally discuss and brief some of the main issues that impeded the resolution of this matter. Ultimately, the Parties' attempts to resolve this matter impassed.

Thereafter, the Parties extensively litigated numerous hotly-contested issues, as reflected on the docket. *See*, *e.g.*, ECF No. 84 (Plaintiff's Motion to Amend Complaint); ECF No. 87 (Defendant's Response to Plaintiff's Motion to

---

[1] The Parties' informal exchange of discovery that took place was significant. For example, one of the issues the Parties briefed/discussed was the issue of whether certain Opt-in Plaintiffs ever completed DVIRs/inspections in the first place. On this point alone, Plaintiff produced **fifty-seven (57)** declarations from the Opt-in Plaintiffs.

Amend Complaint); ECF No. 91 (Defendant's Motion for Protective Order concerning electronic discovery); ECF No. 92 (Plaintiff's Motion to Amend Scheduling Order); ECF No. 93 (Plaintiff's Reply in support of Plaintiff's Motion to Amend Complaint); ECF No. 96 (Plaintiff's Response to Defendant's Motion for Protective Order and request for Sanctions); ECF No. 98 (Defendant's Response to Plaintiff's Motion to Amend Scheduling Order); ECF No. 106 (Plaintiff's Motion to Compel Interrogatories); ECF No. 107 (Plaintiff's Motion to Compel Complete Responses to Plaintiff's Request for Production); ECF No. 112 (Defendant's Response to Plaintiff's Motion to Compel Responses to Plaintiff's Request for Production); ECF NO. 113 (Defendant's Response to Plaintiff's Motion to Compel Answers to Interrogatories).

During that time, the Parties continued to complete the outstanding discovery in this matter, and Defendant served over ten thousand five hundred (10,500) discovery requests on the Plaintiffs.  As a result, Plaintiff filed a Motion for Protective Order and requested representative discovery, Defendant filed its Response, Plaintiff sought Leave to File a Reply and filed his Reply, and Defendant filed a Sur-Reply brief.  *See* ECF Nos. 95, 108, 111, 115 and 116.

In the interim, the Parties continued their settlement negotiations and ultimately agree to terms to resolve this matter on July 4, 2021.

## II.   Claims and Defenses

The Complaint alleges violations of the overtime provisions of the FLSA. *See* ECF No. 1.  In essence, Plaintiff alleges that he worked for Defendant as an on-call Technician, was compensated on an hourly basis, and was required to complete a DVIR/inspection that took at least 20 minutes to complete, off-the-clock, which led to unpaid overtime wages, in violation of the FLSA. *Id.*  Plaintiff maintains that he is similarly situated to the Opt-in Plaintiffs.

Defendant presents numerous defenses to Plaintiff and the Opt-in Plaintiffs' claims that would completely negate the class claims.  First, Defendant denies that Plaintiff and the putative class were required to, or did, complete their DVIR/inspections off-the-clock.  Second, Defendant asserts that it is not required to compensate the Plaintiffs for the time they took to complete the DVIR inspections, either way, because these activities are exempt under the Employee Commuting Flexibility Act and/or constitute *de minimis* non-compensable work under the FLSA.  Third, Defendant also asserts that it is not required to compensate the Plaintiffs for the time they took to complete the DVIR inspections, the completion of which constitutes non-compensable preliminary and postliminary activities as a matter of law.  Fourth, Defendant asserts that numerous Opt-in Plaintiffs never completed a DVIR inspection in the first place.

To the extent the Court does not accept Defendant's complete defenses, Defendant also presents numerous partial defenses that would significantly diminish the Plaintiffs' Claims if accepted.  First, Defendant asserts that it acted in good faith to avoid the imposition of willfulness damages.  Second, Defendant asserts that Plaintiff is not entitled to liquidated damages.  Third, even if the Court is to find that Defendant violated the FLSA and that their violations were willful such that a three year (and not two year) statute of limitations should apply to this matter, Defendant asserts that the claims of numerous class members are nonetheless completely time-barred because they filed their consent to join forms more than three years after their employment ended with Defendant.  Fourth, Defendant asserts that numerous Opt-in Plaintiffs worked in groups, and therefore could not have each completed a DVIR inspection and report each workday because only one Technician was required/permitted to complete a DVIR inspection and Report each workday on a vehicle.

Defendant also vehemently maintains that the Plaintiffs are not similarly-situated, and that this matter should be decertified.  To that end, Defendant first asserts that numerous Opt-in Plaintiffs were not employed by Defendant, but worked as Technicians for a related company, DeAngelo Brothers, LLC, that their names were inadvertently included in the Class List produced in response to the Court Order Certifying the Collective action, and that these individuals

should have never been included in this collective action in the first place. Second, Defendant asserts that the Opt-in Plaintiffs are not similarly-situated because they worked in various Technician positions across the country and were required to complete different primary duties. Third, Defendant asserts that many of the Plaintiffs simply worked as Technicians, and not on-call Technicians, and were therefore not similarly-situated to the Plaintiff or his off-the-clock allegations. Fourth, Defendant asserts that the Plaintiffs are not similarly situated because they were employed by Defendant or DeAngelo Brothers, LLC at various worksites across the country, and worked under different managers and job conditions. Fifth, Defendant asserts that the Plaintiffs are not similarly-situated because the worksites that the Plaintiffs worked utilized different timekeeping tools.[2] Sixth, Defendant asserts that different affirmative defenses apply to the Plaintiffs.[3] Despite the many claims and defenses, the Parties have reached a resolution to settle this matter.

## III.   Overview of the Settlement Terms

The proposed settlement agreement outlining the specific terms is attached as **Ex. A**. Defendants will pay $1,500,000 to settle this collective action

---

[2] For example, Defendant asserts that while certain worksites utilized handwritten time records, other worksites utilized a digital Verizon mobile telephone app to clock-in and clock-out that requires the Technician's complete their DVIR inspections by following a digital prompt that ensures they are clocked-in during their inspection time.

[3] For example, Defendant asserts that the Motor Carrier Act exemption applies to the Technicians that were employed by DeAngelo Brothers, LLC, who were required to cross state lines, whereas this defense may not apply to the Technicians employed by DBI Services, LLC.

("Common Fund") which includes all damages, taxes, fees, costs, and amounts of any kind.  $969,674 of the Common Fund constitutes payments to the Plaintiff's Class ("Plaintiff's Class Fund").  The Plaintiff's Class Fund shall be distributed on a *pro rata* basis.  In addition, $7,500 of the Plaintiff's Class Fund will constitute the named plaintiff, Oscar Dozier Service Award.  $22,826 of the Common Fund is attributed to Plaintiff's costs.  Finally, one-third of the Common Fund, or $500,000, is attributed to Plaintiff's attorneys' fees and remaining costs.  The agreement also provides first class mailing of a Claim Form giving the members an opportunity to "opt-in" to the settlement agreement.  The Opt-in Plaintiffs have 45 days to submit a Claim Form and release to Plaintiffs' Counsel.  The Parties' proposed Class Member Opt-in Settlement Agreement and Release Form is attached as **Ex. A** p. 25.

The Opt-in Plaintiffs' respective recovery is outlined in Ex. A to the Settlement Agreement.  *See* **Ex. A** pp. 12 – 24.  As previously indicated, Plaintiff alleges in his complaint that the DVIR inspection/report took at least twenty (20) minutes to complete.  To put things in perspective, if Plaintiff and every Opt-in Plaintiff—employed by Defendant or DeAngelo Brothers—worked forty (40) minutes off-the-clock **five days a week**, in **every** workweek during the **three** year (willfulness damages) period preceding the filing of each of their respective consent to join forms, they would collectively be entitled to receive $532,411.32 in

unpaid overtime back wages.  Here, the settlement provides the Plaintiffs with $969,674 for the Plaintiff's Class Fund.  In essence, the Plaintiffs are each eligible to receive an amount that is almost double the amount they would be owed in unpaid overtime back wages had they worked forty (40) minutes off-the-clock for five days a week, for every workweek that they worked for the three year period that precedes the filing of their consent to join forms.  This amount is distributed on a *pro rata* basis contingent on the Opt-in's respective pay and time records.  Moreover, to the extent an Opt-in is owed less than $100 based on this formula, the Opt-in will be eligible to receive $100 nonetheless, which shall be distributed from the Plaintiff's Class Fund.  Based on this damages estimate and formula, the Plaintiffs shall receive 50% of their *pro rata* share as a wage distribution, and 50% of their *pro rata* share as a liquidated damages distribution.

The Settlement Agreement provides the Opt-in Plaintiffs with a fair and equitable result.  If, however, an Opt-in Plaintiff elects to not participate in this collective action settlement, or otherwise fails to timely submit a Claim Form within the forty-five (45) day period, the Settlement Agreement provides that the non-participating Opt-in Plaintiff will not give up any of their rights to refile their unpaid wage claims against the Defendants, and that their statutory claims under the FLSA will be equitably tolled from the date of the filing of their consent to join form to the due date of their Settlement Claim Form.  **Ex. A**, p. 25.

As a result, non-participating Opt-in Plaintiff's *pro rata* settlement portion will revert back to the Defendants. *Id.* Accordingly, while Plaintiff believes that the Opt-ins will all be very satisfied with the class settlement, to the extent any Opt-in Plaintiff is not satisfied, or elects to not participate in this class settlement for any reason whatsoever, the Opt-in will not be prejudiced or forced to participate in this class settlement, and the Defendant will also not be prejudiced in that the non-participating Opt-ins' *pro rata* share will revert back to the Defendant.

The settlement agreement also provides that the named Plaintiff shall receive $7,500 as a service award, which "are typically awards to class representatives for their often extensive involvement with a lawsuit." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Numerous courts have authorized such awards as "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Id.; See also George v. Acad. Mortg. Corp. (UT),* 369 F. Supp. 3d 1356, 1374 (N.D. Ga. 2019) (awarding $7,500 to named Plaintiff in FLSA collective action).[4]

In accordance with the legal principles outlined above, the Parties respectfully request the Court approve the Parties' negotiated settlement of Plaintiffs' FLSA claims. The instant adversarial action involves disputed factual and legal issues that could provide the Plaintiff and the putative class a complete

---

[4] In addition and in exchange thereto, named Plaintiff Oscar Dozier will provide Defendant with a general release.

or partial bar to their claims. *See Supra*, at pp. 5 - 7.  Ultimately, the Parties recognized the significant risks in proceeding with this collective action lawsuit. The Parties agree that the terms of settlement reached reflect a reasonable "give-and-take" on the major issues in dispute.  Specifically, Defendant's agreement to make *any* payment to Plaintiffs reflects a significant concession (for purposes of settlement only) with respect to application of the off-the-clock damages given its vigorous defense.  The settlement also provides that the Plaintiffs will receive overtime compensation under the agreement for workweeks during which they may not have worked *any* overtime hours, were paid for overtime hours, or may not be able to reasonably prove their off-the-clock claims, to the extent the Court finds that this work is compensable and that the Plaintiffs are similarly-situated in the first place.  The Parties agree that the negotiated terms of settlement reflect a reasonable compromise of all disputed issues, and that the negotiated settlement is in the Parties' best interest.

Finally, there can be no reason to not approve this settlement because the settlement agreement actually provides each and every Opt-in Plaintiff with the option of "opting-in" to the class settlement.  To the extent any Opt-in Plaintiff is not satisfied, or elects to not participate in this class settlement for any reason whatsoever, the Opt-in Plaintiff will not be prejudiced or forced to participate in this class settlement, and the Defendant will also not be prejudiced in that the

non-participating Opt-in Plaintiff's *pro rata* share will revert back to the Defendant.  Again, while Plaintiff believes that the Opt-in Plaintiffs will all be satisfied with the class settlement, the fact that the Opt-in Plaintiffs can elect to not participate in this collective action means they cannot be prejudiced by same.

Accordingly, the Parties ask the Court to approve the settlement according to the terms of the settlement agreement and enter an Order of dismissal with prejudice attached as **Exhibit B**.

III.    **Standard of Review**

There are two ways in which claims under the FLSA can be settled and released by employees.  First, § 216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor.  *See* 29 U.S.C. § 216(c).  Second, § 216(b) of the FLSA allows employees to settle and release their claims under the FLSA when a court reviews and approves a settlement in a private action for back wages.  *See* 29 U.S.C. § 216(b).

"The federal courts have long recognized a strong policy and presumption in favor of class settlements." *George,* 369 F. Supp. 3d at 1367.  "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  Indeed, there is a "policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982).

"Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that the Eleventh Circuit Court of Appeals "favor[s] and encourage[s] settlements in order to conserve judicial resources.").

In detailing the circumstances justifying court approval of an FLSA settlement in the litigation context, the Eleventh Circuit has stated as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores,* 679 F.2d at 1354. As outlined herein, the settlement of the instant action confers substantial benefits upon Plaintiffs of disputed issues. In essence, the settlement provides the Plaintiffs to receive an amount that is almost double the amount they would be owed in back wages had they successfully proved that they worked **40 minutes** off-the-clock **five** times a week (or 200 minutes per week) **for every** workweek that they worked for the **three year** period that precedes the filing of their consent to join forms where they would be

13

eligible to receive overtime pay.[5]  To the extent an Opt-in Plaintiff is owed less than $100 based on this formula, the Opt-in Plaintiff will be eligible to receive $100 nonetheless, which shall be distributed from the Plaintiff's Class Fund.

While Plaintiff believes that the Opt-in Plaintiffs will be very satisfied with the class settlement, to the extent any Opt-in Plaintiff is not satisfied, or elects to not participate in this class settlement for any reason whatsoever, the settlement agreement provides that the Opt-in Plaintiff will not be prejudiced or forced to participate in this class settlement, and their statutory claims under the FLSA will be equitably tolled from the date of the filing of their consent to join form to the due date of their settlement claim form. **Ex. A**, p. 25.  Accordingly, the Court should approve the Parties' settlement to resolve and release the Plaintiff's FLSA claims against Defendant.

### a.   The Settlement is Fair, Adequate, and Reasonable

In deciding whether to approve the Settlement, the Court analyzes whether it is fair, adequate and reasonable.  *George*, 369 F.Supp.3d at 1369; *See also Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994).  "A settlement is fair, reasonable, and adequate when the interests of the class as a whole are

---

[5] "Eligible to receive overtime pay" refers to workweeks where the additional 200 minutes off-the-clock would lead to overtime compensation.  For example, an employee who is credited to have worked 10 hours in a particular workweek would not be eligible to receive overtime pay even if he was credited for working an additional 200 minutes, whereas an employee who is credited to having worked 39 hours would be eligible to receive overtime compensation had he been credited for having worked an additional 200 minutes.

better served if the litigation is resolved by the settlement rather than pursued. Importantly, the Court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *Id.* (internal citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement:

(1) the existence of fraud or collusion behind the settlement;
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the probability of the plaintiffs' success on the merits;
(5) the range of possible recovery; and
(6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *See also Bennett*, 737 F.2d at 986.  The analysis of these factors shows this Settlement is eminently fair, adequate and reasonable.

### 1. **There was no fraud or collusion.**

The Parties engaged in prolonged adversarial litigation and negotiations, demonstrating the absence of fraud or collusion behind the settlement. *See, e.g., Lunsford v. Woodforest Nat'l Bank*, 2014 WL 12740375, at *7 (N.D. G. May 19, 2014); *See also Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial")).  The Parties settled this Action after participating in mediation before Mr. Hughes, which further

confirms that the process was procedurally sound and not collusive. *See,
e.g., Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960, at *3-4, 2012 U.S. Dist. LEXIS
94958, at *10-11 (M.D. Fla. June 8, 2012). Finally, "the fact that the continued
negotiations of settlement agreement terms and Notice documents were lengthy"
and continued "after the initial mediation and involving additional negotiation"
further demonstrates the absence of collusion. *George*, 369 F.Supp.3d at 1370.[6]

### 2. The Settlement Averts Years of additional Complex and Expensive Litigation.

"FLSA claims typically involve complex mixed questions of fact and
law." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). As
outlined, *supra*, the FLSA claims and defenses are complex; litigating them would
be both difficult and time-consuming. Although this Action was litigated for
three years before the Parties settled this matter, recovery by any means other
than settlement would require additional years of litigation and trial.[7]

In contrast, the Settlement provides immediate and substantial benefits to
the Plaintiffs.  Particularly because the "demand for time on the existing judicial

---

[6] *See also In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1329 n.3 (S.D. Fla. 2001); *Warren v. City of
Tampa*, 693 F.Supp. 1051, 1055 (M.D. Fla. 1988) (record disclosed no evidence of collusion, but to
the contrary showed "that the parties conducted discovery and negotiated the terms of
settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989)).

[7] *see Lunsford*, 2014 WL 12740375, at *7 (*citing U.S. v. Glens Falls Newspapers, Inc.*, 160 F.3d 853,
856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of
open discussion among the parties' attorneys and representatives so that litigation may be
settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a
trial")).

system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F.Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the Settlement, which provides reasonable benefits to the class. *Lunsford*, 2014 WL 12740375, at *7.

### 3.  The factual record is sufficiently developed to enable class counsel to make a reasoned judgment.

Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *Lunsford*, 2014 WL 12740375, at *8 (*citing In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995)). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Id.* (*quoting Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992)).  Here, Plaintiff settled the action with the benefit of extensive class and merits-based discovery.  Class Counsel's review of the documents produced and depositions conducted positioned them to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims, Defendant's defenses, and the prospects for success on FLSA collective action decertification,  willfulness and "good faith" defenses, summary judgments, and trial.

Prior to settling, Class Counsel developed ample information from which to assess the probability of success, the possible range of recovery, and the likely expense and duration of the litigation.   Even in the absence of such discovery, Class Counsel is familiar with the legal issues and likely defenses of employers on these overtime issues in off-the-clock collective actions.   Plaintiff's counsel, Michael N. Hanna, Esq., has extensive experience litigating wage and hour class/collective actions, including serving as lead counsel in one of the nation's largest FLSA collective actions that involves over 3,400 class members in an off-the-clock case.  *See*, *e.g.*, *Kutzback v. LMS Intellibound, LLC*, 301 F. Supp. 3d 807 (W.D. Tenn. 2018).  "Information obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case." *Lunsford*, 2014 WL 12740375, at *8, 2014 U.S. Dist. LEXIS 200716, at *23 (*citing Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1325 (S.D. Fla. 2005)).

### 4.  **Plaintiffs would have faced obstacles to prevailing and delay**.

The likelihood and extent of any recovery absent settlement is another important factor in assessing the reasonableness of a settlement.  *see Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise"). Here, Defendant vigorously disputes liability on the entire claim, and presents numerous defenses

to the substantive claims, as well as for decertification purposes. *See Supra* at pp.

5-7.  Apart from the risks, continued litigation would have involved substantial

delay and expense, which further counsels in favor of approval. *See George*, 369

F.Supp.3d at 1371. "Given the risks attending these claims, as well as the

certainty of substantial delay and expense from ongoing litigation and class

certification/decertification proceedings, the Settlement cannot be seen as

anything except a fair compromise." *Id.*[8]

5. **The benefits provided by the settlement are fair, adequate, and reasonable compared to the range of possible recovery**.

"In determining whether a settlement is fair given the potential range of

recovery, the Court is guided by the principle that 'the fact that a proposed

settlement amounts to only a fraction of the potential recovery does not mean the

settlement is unfair or inadequate.'" *George*, 369 F. Supp. 3d at 1371 (*citing Behrens*

*v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th

Cir. 1990)). Here, however, each Plaintiff that elects to participate in the class

settlement will receive a net settlement amount that is almost double the amount

they would be owed in overtime back wages had they worked forty (40) minutes

off-the-clock five days each week, for every workweek that they worked for the

---

[8] *See also Lunsford*, 2014 WL 12740375, at *8, (*citing Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" creating "great uncertainty as to the fact and amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial") ).

three year period that precedes the filing of their consent to join forms. Since Plaintiff alleges in his complaint that the DVIR inspection/report took at least twenty (20) minutes to complete off-the-clock, this settlement value likely provides each Opt-in close to, if not more than, their full estimated recovery for back wages and liquidated damages based on this damages scenario without any further delay. "Settling for close to the amount of full liability represents a respectable victory for the class members and therefore favors approval of settlement." *Creed v. Benco Dental Supply Co.*, 2013 WL 5276109 at *4, (M.D. Pa. Sep. 17, 2013). "The total settlement amount is fair and reasonable given the obstacles confronted and the complexity of the action, and the significant barriers that stood between the pre-settlement status of the case and final judgment, including the prospect of contested class certification/decertification and potential interlocutory Rule 23(f) appeal of any order granting class certification; motions for summary judgment; trial; and post-trial appeals." *George*, 369 F.Supp.3d at 1372.

6. **The Opinions of Class Counsel, the Class Representative, and Absent Class Members Favor Approval of the Settlement**.

The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Lunsford*, 2014 WL 12740375, at *9 *citing Warren*, 693 F.Supp. at 1060. The Parties were represented by competent, experienced counsel with extensive experience

in wage and hour class and collective action litigation. Counsel for the Parties, having thoroughly vetted the legal, factual, and evidentiary issues in this case, recommend approval of this settlement. Pursuant to the FLSA, no party may be bound by a settlement unless they "opt in'' to the case. 29 U.S.C. § 216 (b). As a result, there are also no "absent" class members. Moreover, the Settlement Agreement allows the Opt-in Plaintiff to elect to not participate in this collective action settlement if they so desire. Since there are no "absent" class members being bound by this settlement, this factor also favors approval of settlement.

In this case, all six factors point to a determination that the proposed settlement is "fair and reasonable." Accordingly, the Parties ask the Court to approve the settlement according to the terms of the settlement agreement and enter an Order of dismissal with prejudice.

b. **Plaintiff's Counsel is entitled to the requested attorneys' fees and costs.**

The Supreme Court and Eleventh Circuit held that "attorneys who create a common fund are entitled to be compensated for their efforts from a reasonable percentage of that fund." *Stahl v. Mastec, Inc.*, 2008 WL 2267469, *1 (M.D. Fla. 2008); citing *Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *See also Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *In re*

*Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1362 (S.D.Fla. 2011) ("[T]he Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions"). In an FLSA collective action, "[a]lthough the Court must consider the reasonableness of any award of attorney's fees, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face." *Vogenberger v. ATC Fitness Cape Coral, LLC,* 2015 WL 1883537, at *5 (M.D. Fla. Apr. 24, 2015); *Hosier v. Mattress Firm, Inc.* 2012 WL 2813960 (M.D. Fla. June 8, 2012). In addition, the FLSA provides for a mandatory award of "Costs of the action to a prevailing plaintiff." *See* 29 U.S.C. § 216(b); *Glenn v. Gen Motors Corp.*, 841 F.2d 1567 (11th Cir. 1988).

As reflected in the settlement agreement, Plaintiff seeks an award of $22,826 for reimbursement of some (but not all) of the costs incurred so far in the three years of collective action litigation.[9] Plaintiffs' attorneys' fees and remaining cost[10] award constitutes 1/3 of the common fund. "Courts within this Circuit have awarded attorney's fees of approximately one-third of a common

---

[9] The requested $22,826 award for costs is intended to reimburse Plaintiff's counsel for *some* of costs, which includes filing costs, mediator costs, process server costs, court reporter costs, FedEx costs, and costs to Plaintiff's third-party class action administrator, Simpluris, Inc., who processed the notice and consent to join form to the 3,262 thousand putative class members, as well as processing a reminder notice and consent form to the 3,262 putative class members.

[10] The remaining costs not included in the requested $22,826 cost award are extensive, and include, but are not limited to: 1) postage costs associated with First class mailing of the Claim Form and settlement checks to the Plaintiffs, which amounts to **1,218** mailings if all Plaintiffs elect to participate in this settlement; 2) all printing costs associated with this document-intensive collective action over the past three years; and 3) all long-distance telephone call charges associated with this nationwide collective action.

fund in FLSA and wage and hour cases." *George*, 369 F. Supp. 3d at 1382 (Approving Common Fund that provides Class Counsel's fee paid at 33% of the $925,000 Settlement Fund, and an additional amount for costs and settlement administration costs); *See also Reyes v. AT & T Mobility Servs., Ltd. Liab. Co.*, No. 10-20837-Civ, 2013 WL 12219252, at *3, 2013 U.S. Dist. LEXIS 202820, at *10 (S.D. Fla. June 21, 2013) (approving fees for FLSA collective action settlement, holding "Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit.); *Adams v. Gilead Group, LLC, et. al.*, Case No. 3:16-cv-1566-J-PDB, ECF No. 107 (June 25, 2019) (awarding a few award of 33% of the Settlement fund in an FLSA collective action, and an additional $9,996.94 for costs); *Freeman v. Trainingwheel Corp., LLC*, 2020 WL 7401488 (M.D. Fla. June 26, 2020) (Approving common Fund in FLSA Collective Action that provides Plaintiff's counsel fees of 1/3 the Gross Settlement amount and reimbursement of their out-of-pocket costs).[11]    Furthermore, District Courts throughout the

---

[11] *See also Vogenberger,* 2015 WL 1883537 (awarding 33% of common fund to Plaintiff's counsel in FLSA collective action); *Kemper v. Rent-A-Center, Inc.*, No. 4:00-cv-00435-RH-WCS [Dkts. 14-15] (N.D. Fla. 2000) (same); *Graves v. Estes Heating & Air Conditioning, Inc.*, Case No. 3:14-cv-0084-TCB, Dkt. 47 (N.D. Ga. 2015) (awarding fee of 33.33% of the common fund in FLSA case);*Encarnacion v. J.W. Lee, Inc.*, 2015 WL 6437686, at *4 (S.D. Fla. Oct. 22, 2015) (approving class and FLSA collective action settlement of $6,000,000, which included $1,641,686.06 as attorneys' fees and $18,763.94 for costs.); *Stahl*, 2008 WL 2267469 (Approving attorney award of 28.8% of the $13,137,365 common fund, or $3,659,365 for fees and costs in wage and hour class action); *Signorelli v. Utiliquest LLC*, 5:08-cv-38-OC-10GRJ, Docket Entry 46 (July 25, 2008) (Hodges, J.) (awarding $3,000,000.00 for attorneys' fees out of the $10,000,000.00 common fund); *Kreher v. City of Atlanta, Georgia*, 2008 WL 113999561 (N.D. Ga. Sept. 30, 2008) (Approving common fund in FLSA Collective action that provides Plaintiff's counsel $2,410,000 from a $7,500,000 common fund, or 32.13%); *Mosley v. Lozano Insurance Adjusters, Inc.*, 2021 WL

Country regularly award 30% to 50% for fees in class and collective actions.  *See, e.g.*, *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (Finding that the agreed upon 39% covering fees and costs was reasonable as a matter of law in an FLSA collective action).

Plaintiffs' request for approval of Class Counsel's 33% fee also falls within the range of the private marketplace, "where contingency-fee arrangements are often between 30 and 40 percent of any recovery." *George*, 369 F.Supp.3d at 1383.

Finally, the Parties agree that 33.3% of the common fund is a reasonable percentage for attorneys' fees.  Plaintiff's counsel took this case on a contingency basis, which provides for the payment of attorneys' fees in the amount of 40% of any settlement, and Plaintiff's counsel has agreed to the substantially lower percentage of 33.3%.  Because of this contingency fee arrangement, Plaintiff's counsel has not received any payment for any of their time litigating the case since 2018, nor have they received reimbursement for their out-of-pocket costs expended.   Furthermore, Plaintiffs' counsel, Michael N. Hanna, Esq. has extensive experience litigating wage and hour class/collective actions, and the

---

293243 (M.D. Fla. Jan. 11, 2021); *Reyes v. AT&T Mobility Serv., LLC*, 2013 WL 12219252 (S.D. Fla. June 21, 2103) (approving 1/3 common fund for fees, or $1,084,875, and $23,000 in costs in wage and hour class and collective action); *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) (Awarding 1/3 of settlement fund to Plaintiff's counsel for fees, and an additional $10,000 in costs in wage and hour class and collective action).

results in this matter warrant such an amount, given Defendants' vigorous defense and the results obtained on the Plaintiffs' behalf. [12]

Plaintiff's Counsel undertook the financial risk of potentially unsuccessful litigation to recover overtime pay for workers they believe were not paid for all hours worked.   In discussing the inherent risk of prosecuting FLSA collective action litigation on a contingency fee, the Northern District of Georgia stated:

> In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. . . . That risk warrants an appropriate fee. Indeed, a "contingency fee arrangement often justifies an increase in the award of attorney's fees." *Lunsford*, 2014 WL 12740375, at *14, 2014 U.S. Dist. LEXIS 200716, at *43 (*citing Sunbeam*, 176 F.Supp.2d at 1335 (*quoting Behrens*, 118 F.R.D. at 548); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent-fee basis, plaintiffs' counsel must be adequately compensated for the risk of non-payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award") ).

George, 369 F. Supp. 3d at 1380–8.  The record here leaves no doubt that the fee request is appropriate and comports with fees awarded in similar cases.

---

[12] Mr. Hanna is an Equity Shareholder at the national law firm of Morgan & Morgan, P.A., and leads the firm's Michigan office.  He has represented thousands of clients as lead counsel or co-lead counsel in wage and hour class and/or collective action cases in multiple states and venues across the United States.  *See, e.g., Adams v. Gilead Group, LLC,* 280 F. Supp. 3d 1358 (M.D. Fla. 2017); *Daoust v. Maru Rest., LLC,* 2019 WL 2866490 (E.D. Mich. July 3, 2019); *Simmons v. Mathis Tire & Auto Service, Inc.*, 2015 WL 5008220 (W.D. Tenn. Aug. 20, 2015); *Kidd v. Mathis Tire & Auto Service, Inc.*, 2014 WL 4923004 (W.D. Tenn. Sept. 18, 2014); *Leverett v. Primestar Painting, Inc. et. al.*, 2018 WL 3013660 (E.D. Mich. June 14, 2018); *Kamin, et. al. v. R.K.J., et. al.*, Case No. 18-CV-11137 (E.D. Mich.); *George v. Simon Brothers, Inc. et. al.*, Case No. 1:19-cv-00513-RJJ-PJG (W.D. Mich.).

## Conclusion

Wherefore, the Parties respectfully request that this Court approve the settlement agreement between the Parties, and dismiss this action with prejudice. The Parties agree that this is a fair settlement and that it is in both of their best interests to resolve this matter, pay the settled claims, and dismiss this matter.

DATED this 27th day of July, 2021

| | |
|---|---|
| **Michael N. Hanna, Esq.** | **Brandice D. Dickson, Esq.** |
| Michael Hanna, Esq. | **Brandice D. Dickson, Esq.** |
| Florida Bar No.: 085035 | Florida Bar No: 300100 |
| Chanelle Joy Ventura | PENNINGTON, P.A. |
| Florida Bar No.: 1002876 | 215 S. Monroe Street, 2d Floor |
| Morgan & Morgan, P.A. | Tallahassee, Florida 32301 |
| 8151 Peters Road, Suite 4000 | Telephone:  (850) 222-3533 |
| Plantation, Florida 33324 | **brandi@penningtonlaw.com** |
| Telephone: (313) 739-1950 | |
| mhanna@forthepeople.com | Attorneys for Defendant, DBI |
| cventura@forthepeople.com | Services, LLC |
| Attorneys for Plaintiff | |