# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

OSCAR DOZIER, individually on
behalf of himself and other
similarly situated employees,

      Plaintiffs,

v.                                      Case No.  3:18-cv-972-BJD-MCR

DBI SERVICES, LLC, a Foreign Limited
Liability Company,

      Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on the parties' Joint Motion to

Approve FLSA Settlement ("Joint Motion") (Doc. 118) and Plaintiffs' and

Defendant's Supplemental Memorandum in Support of the Joint Motion to

Approve FLSA Settlement (Doc. 130) ("Supplemental Memorandum").  The

undersigned has reviewed the filings in this case and has conducted a

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed.R.Civ.P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

hearing with the parties on November 10, 2021.  For the reasons stated herein, the undersigned recommends that the Joint Motion (Doc. 118) be **GRANTED**, the proposed Settlement Agreement and Release (Doc. 118-1) be **APPROVED**, and the case be **DISMISSED** as stated herein.

## I.    Background

On August 10, 2018, Plaintiff brought this collective action on behalf of himself and other similarly situated employees against Defendant DBI Services, LLC, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*  (Doc. 1.)  Plaintiff sought to recover unpaid overtime compensation, liquidated damages, attorney's fees and costs as well as declaratory relief for Defendant's alleged failure to compensate him at the statutory rate of one and one-half times his regular rate of pay for any overtime hours worked.  (*See id.*)  Plaintiff alleged that, as an on-call technician performing general maintenance on highways and roads for Defendant, he was paid hourly and was required to perform a company vehicle inspection twice each workday, off the clock, which resulted in unpaid overtime wages in violation of the FLSA.[2]  (*Id.* at 3-4.)

---

[2] Plaintiff alleged, *inter alia*, that he had to complete a Daily Vehicle Inspection Report ("DVIR"), both before clocking in and after clocking out from Defendant's facility.  (Doc. 1 at 3-4.)  According to Plaintiff, each inspection took 20 minutes to complete, which totaled approximately 40 minutes of off-the-clock work each workday for which he was not paid.  (*Id.* at 4-5.)

On September 11, 2018, Defendant moved to dismiss Plaintiff's Complaint under Rule 12(b)(6), Federal Rules of Civil Procedure, arguing that Plaintiff failed to state a claim on which relief could be granted because, as a matter of law: (1) the company vehicle inspections are not compensable activities under the FLSA, but rather preliminary and postliminary activities that are not integral and indispensable to the principal activities of the job; and (2) the vehicle inspections are *de minimis* and thus not compensable. (*See* Doc. 12 at 1-2.) On July 3, 2019, the undersigned entered a Report and Recommendation recommending denial of the Motion to Dismiss. (Doc. 32.) On August 5, 2019, the Court entered an Order adopting the undersigned's Report and Recommendation, overruling Defendant's objections thereto, and denying Defendant's Motion to Dismiss. (*See* Docs. 33, 34, 35.) On August 15, 2019, Defendant filed its Answer and Affirmative Defenses, denying liability and asserting various affirmative defenses. (Doc 36.)

On February 24, 2020, the Court granted Plaintiff's Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members, on behalf of "all hourly-paid technicians who work/worked for DBI Services, LLC companywide within the last three years since August 10, 2015, the date the Complaint was filed, who were/are required to complete DBI's [DVIR] inspection and/or related work and were not paid

overtime premiums for overtime hours worked." (Doc. 37 at 10.)  According to the parties, "416 Opt-in Plaintiffs filed their consent to join, 10 of which later withdrew their consent to join form."[3]  (Doc. 118 at 4.)  In the discovery process, the parties produced over 47,000 documents and took the depositions of Plaintiff Dozier and other Opt-in Plaintiffs.  (*Id.*)  Defendant also served over 10,500 discovery requests to Plaintiffs, prompting Plaintiffs to move for entry of a protective order and for representative discovery.  (*Id.* at 5 (citing Docs. 95, 108, 111, 115, 116).)  They also participated in mediation on February 24, 2021, which was unsuccessful.  (*Id.*)  The parties continued to litigate various issues, including Plaintiff's motion to amend the Complaint, and filed various discovery-related motions and briefs.  (*See* Docs. 84, 87, 91, 92, 93, 96, 98, 106, 112, 113.)

On July 7, 2021, the parties submitted a Joint Notice of Settlement, (Doc. 117) and, on July 27, 2021, filed the present Joint Motion (Doc. 118), seeking judicial approval of their collective action Settlement Agreement. (*Id.* at 4.)  On July 28, 2021, the Joint Motion was referred to the

---

[3] The following Opt-in Plaintiffs withdrew their Consent to Join forms: Amilcar Salazar-Salguero (Doc. 72-1); Enrique Castillo, Jr. (Doc. 49-1); Michael Adkins (Doc. 53-1); William Berry (Doc. 50-1); Wesley Gilbert (Doc. 50-1); Jimmy Hanna, Jr. (Doc. 72-1); William Heishman (Doc. 48-1); Spencer Lookebill (Doc. 51-1); Daniel Sanchez (Doc. 48-1); Gumecindo Tobias (Doc. 49-1); and Robert Price. (*See* Docs. 81, 83, 101, 105.)

undersigned for preparation of a report and recommendation as to whether the Settlement Agreement should be approved.

On November 3, 2021, the undersigned directed the parties to submit supplemental briefing addressing: (1) the service award to be paid to Plaintiff Dozier as the collective action representative in light of *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1261 (11th Cir. 2020), mandate withheld, No. 18-12344 (Nov. 9, 2020)[4]; (2) Plaintiffs' counsel's failure to include any billing records or other documents supporting the award of attorneys' fees and request for costs; and (3) the parties' proposed schedule, which did not provide Opt-in Plaintiffs with the opportunity to object to the terms of the Settlement Agreement. (Doc. 123).

On November 10, 2021, pursuant to Plaintiffs' emergency motion for a hearing regarding Defendant's deteriorating financial condition, the undersigned held a hearing to address the potential implications of Defendant's financial deterioration on the pending Joint Motion,[5] as well as

---

[4] In *Johnson*, the Eleventh Circuit held that Supreme Court precedent "prohibit[s] [an] incentive award . . . that compensates a class representative for h[er] time and rewards h[er] for bringing a lawsuit." 975 F.3d at 1260 (discussing the applicability of *Trustees v. Greenough*, 105 U.S. 527 (1882) and *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) in the class action incentive award context).

[5] At this time, it does not appear that Defendant's financial deterioration has any impact on the adjudication of the Joint Motion or the parties' Settlement Agreement. Therefore, the undersigned does not discuss this in any further detail.

some of the issues identified in the Court's November 3, 2021 Order.  (*See* Docs. 119, 122, 124, 127.)  On November 29, 2021, the parties submitted their Supplemental Memorandum in support of the Joint Motion as directed by the Court.  (Doc. 130.)  Accordingly, the Joint Motion is ripe for review.

## II.    The Settlement Agreement & Joint Motion

### A.    The Settlement Agreement

Pursuant to the Settlement Agreement, Defendant has agreed to pay a total sum of $1,500,000 ("Common Fund") to resolve this FLSA collective action as follows: (1) $969,674 of the Common Fund constitutes payment to Plaintiff's Class ("Plaintiff's Class Fund"), which will be distributed on a *pro rata* basis,[6] contingent on the Opt-in Plaintiff's respective pay and time records; (2) $7,500 of the Plaintiffs' Class Fund is to be paid as a service

---

[6] The Plaintiff's Class fund is to be apportioned as follows: "$484,837 as payment to Plaintiff's class for back wages" and "$484,837 for payment to the Plaintiff's Class for liquidated damages." (Doc. 118-1 at 4.)  Based on the damages formula, each participating Opt-in Plaintiff will receive 50% of their *pro rata* share as a wage distribution and 50% as a liquidated damages distribution based on their time records.  (Doc. 118 at 9-10.)  Similar damages formulas have been found to be reasonable in FLSA collective action cases.  *Metzler v. Med. Mgmt. Int'l, Inc.*, Case No. 8:19-cv-2289-T-33CPT, 2020 WL 5994537, at *3 (M.D. Fla. Sept. 10, 2020) (citation omitted) (stating that "courts in this District have previously found the use of such a pro rata formula fair").

The Settlement Breakdown spreadsheet listing the Opt-in Plaintiffs and their respective awards, including back wages and liquidated damages, is attached to the Settlement Agreement as Exhibit A (Doc. 118-1 at 12-24.)  The original exhibit contained a minor error, which was corrected by the parties in a subsequent submission titled "Damages Model – Class Disbursements."  (*See* Docs. 125 & 125-1.)

award to Plaintiff Dozier (in addition to his pro-rated $13,868.57 award) and as consideration for his general release of claims[7]; (3) $500,000 is attributed to Plaintiffs' attorneys' fees and remaining costs; and (4) $22,826 is to be paid as reimbursement for some, but not all, of the costs incurred by Plaintiffs. (*See* Docs. 118, 118-1, 125, 125-1, 130.)

According to the Settlement Agreement, the Class Member Opt-In Settlement Agreement and Release ("Claim Form") (Doc. 118-1 at 25-26) will be mailed to the Opt-in Plaintiffs within ten days of the Court's approval of the Joint Motion. (*Id.* at 6.) The Claim Form must then be returned to Class Counsel within 45 days after its mailing. (*Id.*) Late Claim Forms will result in such Opt-in Plaintiff being considered a "non-participating Opt-in Plaintiff

---

[7] The Settlement Agreement includes a "Releases" provision, which provides:
a. As of the Effective Date of this Settlement Agreement, Plaintiff acknowledges full satisfaction of, and fully, and finally, and forever settles with, releases, and discharges the Released Parties (as defined below) of and from all Settled Claims (as defined below).
b. For purposes of this Settlement Agreement, "Released Parties" means and includes Defendant and DeAngelo Brothers, Inc., as well as all of their affiliated, subsidiary, and parent companies, doing business in their own names and doing business under any other names, and all of their respective officers, directors, partners, insurers, employees, associates, trustees, agents, independent contractors, representatives, attorneys, predecessors, successors, and assigns.
c. For purposes of this Settlement Agreement, "Settled Claims" means any and all claims for unpaid wages, including alleged violations under the FLSA and any state or local law or regulation that occurred between August 13, 2015 to the Effective Date of this [S]ettlement [A]greement, except for the individual claims of the Non-Participating Opt-in Plaintiffs as set forth in Paragraph 3(b).
(Doc. 118-1 at 9-10.)

whose claim will be equitably tolled." (*Id.*)  The parties also agreed to the following payment schedule:

> a.    Payment of the Service Award to named Plaintiff, Oscar Dozier . . . shall be made within twenty (20) days of the Court Order approving the collective action settlement.

> b.    Payment to Class Counsel for $261,413 shall be made within twenty (20) days of the Court Order approving the collective action settlement, which represents one-half of the Payment to Class Counsel for Attorneys' fees and costs . . . .

> c.    The back wage payments to Plaintiffs' Class members . . . shall be distributed to the Class members who respond to the class notice by sending in their Claim Forms within the forty-five (45) day claim period, and will be mailed within twenty (20) days after the claim period has expired. Unclaimed payments ninety (90) days after mailing shall revert to Defendant and neither Class Counsel nor Defendant shall be required to re-issue payment.

> d.    The liquidated damages payments to Plaintiffs' Class members . . . shall be mailed on or before August 1, 2022, for the Class members who responded to the class notice by sending in their Claim Forms.

> e.    Payment to Class Counsel for $261,413 shall be made on or before August 1, 2022, which represents one-half of the payment to Class Counsel for Attorneys' fees and costs . . . .

(Doc. 118-1 at 7-8.)

## B.    The Joint Motion

In their Joint Motion, the parties request that the Court enter a final order approving the Settlement Agreement pursuant to 29 U.S.C. § 216(b) of

8

the FLSA "and dismissing the case with prejudice, while retaining

jurisdiction to enforce the terms of the Parties' settlement." (Doc. 118 at 2.)

The parties outline their various respective claims and defenses. Defendant

specifically summarizes its various defenses "that would completely negate

the class claims," as follows:

> First, Defendant denies that Plaintiff and the putative class were required to, or did, complete their DVIR/inspections off-the-clock. Second, Defendant asserts that it is not required to compensate the Plaintiffs for the time they took to complete the DVIR inspections, either way, because these activities are exempt under the Employee Commuting Flexibility Act and/or constitute *de minimis* non-compensable work under the FLSA. Third, Defendant also asserts that it is not required to compensate the Plaintiffs for the time they took to complete the DVIR inspections, the completion of which constitutes non-compensable preliminary and postliminary activities as a matter of law. Fourth, Defendant asserts that numerous Opt-in Plaintiffs never completed a DVIR inspection in the first place.

(*Id.* at 6.)

Defendant also presents the following partial defenses, which

Defendant contends "would diminish the Plaintiffs' claims if accepted":

Defendant acted in good faith; Plaintiffs are not entitled to liquidated

damages, and, even if the Court were to find Defendant acted willfully, the

claims of "numerous class members" are time barred because they were filed

more than three years after their employment ended; and numerous Opt-in

Plaintiffs worked in groups and "could not have completed a DVIR inspection

9

and report each workday because only one Technician was required/permitted to complete a DVIR inspection and Report each workday on a vehicle." (*Id.* at 7.) Although Defendant did not move for decertification, it also "vehemently maintains that the Plaintiffs are not similarly situated, and that this matter should be decertified." (*Id.* at 7-8.) "Despite the many claims and defenses," the parties assert they reached a "resolution to settle this matter." (*Id.* at 8.)

According to the parties, "Plaintiffs are each eligible to receive an amount that is almost double the amount they would be owed in unpaid overtime back wages had they worked forty (40) minutes off-the-clock for five days a week, for every work-week that they worked for the three[-]year period that precedes the filing of their consent to join forms." (*Id.* at 9-10.) The parties explain that these amounts will be "distributed on a *pro rata* basis contingent on the Opt-in's respective pay and time records," and "[b]ased on this damages estimate and formula, the Plaintiffs shall receive 50% of their *pro rata* share as a wage distribution, and 50% of their *pro rata* share as a liquidated damages distribution." (*Id.* at 10.) To the extent an Opt-in Plaintiff is owed less than one hundred dollars ($100) based on this formula, "the Opt-in will be eligible to receive $100 nonetheless, which shall be distributed from the Plaintiff's Class Fund." (*Id.*)

10

The parties also contend that if an "Opt-in Plaintiff elects to not
participate in this collective action settlement, or otherwise fails to timely
submit a Claim Form within the forty-five (45) day period," the terms of the
Settlement Agreement provide that "the non-participating Opt-in Plaintiff
will not give up any of their rights to refile their unpaid wage claims against
the Defendants," as "their statutory claims under the FLSA will be equitably
tolled from the date of the filing of their consent to join form to the due date
of their Settlement Claim Form." (*Id.*)  As a result, a "non-participating Opt-
in Plaintiff's *pro rata* settlement portion will revert back to the Defendants
[sic]." (*Id.* at 11.)  Thus, "to the extent any Opt-in Plaintiff is not satisfied, or
elects not to participate in this class settlement for any reason whatsoever,"
the parties argue, "the Opt-in will not be prejudiced or forced to participate in
this class settlement, and the Defendant will also not be prejudiced in that
the non-participating Opt-ins' *pro rata* share will revert back to the
Defendant." (*Id.*)

The parties also agree that the negotiated terms of the Settlement
Agreement reflect a "reasonable compromise of all disputed issues, and that
the negotiated settlement is in the Parties' best interest."[8] (*Id.* at 12.)  They

---

[8] For example, the parties assert that this action involves "disputed factual
and legal issues that could provide the Plaintiff and the putative class a complete or
partial bar to their claims." (Doc. 118 at 11-12.)  The parties recognize the

contend that the Settlement is fair, adequate, and reasonable, in light of the following six factors: (1) there was no fraud or collusion behind the settlement; (2) the settlement averts years of additional complex and expensive litigation; (3) the factual record is sufficiently developed to enable class counsel to make a reasoned judgment; (4) Plaintiffs would have faced obstacles to prevailing and delay; (5) the benefits provided by the settlement are fair, adequate, and reasonable compared to the range of possible recovery; and (6) the opinions of class counsel and the class representative, as well as the lack of "absent" class members.  (*Id.* at 14-21.)

Additionally, the parties argue that the $7,500 service award to Plaintiff Dozier is proper and that such service awards "'are typically awards to class representatives for their often extensive involvement in a lawsuit.'" (Doc. 118 at 11 (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).) The parties contend that "[n]umerous courts have authorized such awards as 'efficacious ways of encouraging members of a class to become class

---

significant risks in proceeding with this action, and agree that the settlement terms reflect a reasonable compromise on the major disputed issues.  (*Id.* at 12.)  They contend that "Defendant's agreement to make any payment to Plaintiffs reflects a significant concession (for purposes of settlement only) with respect to application of off-the-clock damages given its vigorous defense."  (*Id.*)  Plaintiffs will also receive overtime compensation "for workweeks during which they may not have worked *any* overtime hours, were paid for overtime hours or may not be able to reasonably prove their off-the-clock claims," provided the Court finds this work is compensable and that Plaintiffs are similarly-situated.  (*Id.*)

12

representatives and rewarding individual efforts taken on behalf of the

class.'" (*Id.* (citing *Hadix*, 322 F.3d at 897; *George v. Acad. Mortg. Corp. (UT)*,

369 F. Supp. 3d 1356, 1374 (N.D. Ga. 2019).)  In addition, Plaintiff Dozier will

also provide Defendant with a general release in exchange for the service

award.  (*See id.* at 11 n.4.)

The parties also seek approval of the $500,000 attorneys' fees award to

Plaintiffs' counsel, representing one-third of the Common Fund, which they

contend is reasonable and in line with attorneys' fees awards in other FLSA

collective action cases.  (*Id.* at 22-23.)  The parties contend that "'[c]ourts

within this Circuit have awarded attorney's fees of approximately one-third

of a common fund in FLSA and wage hour cases'" (*id.* at 23-24 (quoting

*George*, 369 F. Supp. 3d at 1382) (collecting cases)), and that courts

throughout the country "regularly award 30% to 50% for fees in class and

collective actions" (*id.* at 24-25 (citation omitted)).  Plaintiffs' counsel also

assert that they took the case on a contingency fee basis, initially "in the

amount of 40% of any settlement," but have since agreed to lower the fee to

33% of the settlement amount.  (*Id.* at 25.)  They have not received any

payment during the pendency of this case and have not been reimbursed for

any out-of-pocket costs incurred in this case.  (*Id.*)  They also argue that the

attorneys' fees award is justified in light of Plaintiffs' lead counsel's extensive

13

experience in litigating wage and hour class/collective actions and the result

obtained in this matter, despite Defendant's vigorous defense. (*Id.* at 26.)

The parties also contend that an award of $22,826 for reimbursement of some

of the costs incurred by Plaintiffs is reasonable. (*Id.* at 23.)

In the Supplemental Memorandum, the parties maintain that the

collective action service award to Plaintiff Dozier is not prohibited by

*Johnson* for various reasons, including that the service award is permissible

as consideration for his general release of claims against Defendant. (Doc.

130 at 6-7.) Plaintiffs also reiterate that the attorneys' fees award,

constituting one-third of the common fund, is reasonable that the Court need

not engage in a lodestar analysis of the attorneys' fees request. (*Id.* at 10-18.)

Plaintiffs also provide a detailed list of the costs incurred for which they seek

reimbursement. (*Id.* at 18.) The parties also contend that the parties'

proposed timeline, which allows the Opt-in Plaintiffs to "opt-in" to the

Settlement without providing them an opportunity to object to its terms, is

proper. (*Id.* at 21-23.)

### III.   Standard

Section 216(b) of the FLSA provides in part:

> Any employer who violates the provisions of section 206 or
> section 207 of this title shall be liable to the employee or
> employees affected in the amount of . . . their unpaid overtime
> compensation . . . and in an additional equal amount as

14

> liquidated damages. . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b). Additionally, an action to recover unpaid overtime compensation under the FLSA "may be maintained against any employer . . . by any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated." *Id.* However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* The purpose of such a collective action is "to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Prickett v. Dekalb Cnty*, 349 F.3d 1294, 1297 (11th Cir. 2003).

Also, "to maintain an opt-in class action under §216(b), plaintiffs must demonstrate they are 'similarly situated.'" *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001) (per curiam). In FLSA collective action cases, the Eleventh Circuit has suggested a two-stage approach where courts may first conditionally certify the class to receive notice of the lawsuit and an opportunity to consent to join as plaintiffs ("conditional certification" stage), and then, at a later stage typically precipitated by a motion for "decertification," the court may decide whether to maintain the case as a

15

collective action ("final certification" stage). *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952-53 (11th Cir. 2007).

"[I]n the context of suits brought directly by employees against their employer under section 216(b) . . . the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Judicial review is required because the FLSA was meant to protect employees from substandard wages and oppressive working hours, and to prohibit the contracting away of these rights. *Id.* at 1352. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," the district court is allowed "to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

To determine whether a settlement in an FLSA collective action is fair and reasonable, the Eleventh Circuit has considered the following factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of Plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*, 18 F.3d 1527, 1530 n.6

(11th Cir. 1994).  Nevertheless, courts should presume a settlement is

fair and reasonable.  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.

1977).

Moreover, in determining "whether a settlement is fair and reasonable,

no binding precedent requires different treatment of a[n] FLSA collective

action and a[n] FLSA individual action." *Lockwood v. CIS Servs., LLC*, No.

3:16-cv-965-J-39-PDB, 2019 WL 2226126, at *8 (M.D. Fla. May 3, 2019)

(report and recommendation adopted by 2019 WL 3383628 (M.D. Fla. June

13, 2019)).  Some district courts will make a determination regarding "final

certification (i.e. whether the plaintiffs are similarly situated), while other

district courts deem such consideration unnecessary." *Id.* (comparing

*Ruddell v. Manfre*, No, 3:14-cv-873-J-34MCR, 2015 WL 7252947, at * 1-3

(M.D. Fla. Nov. 2015) (finding final certification necessary), with *Campbell v.

Pincher's Beach Bar Grill, Inc.*, No. 2:15-cv-695-FtM-99MRM, 2017 WL

3700629, at *1-2 (M.D. Fla. Aug. 24, 2017) (report and recommendation

adopted by 2017 WL 3668889 (M.D. Fla. Aug. 25, 2017)) (finding final

certification unnecessary)); *see also Metzler*, 2020 WL 5994537, at *2  ("In line

with *Campbell* and a number of similar cases in this District and given that

discovery in the instant case is incomplete, the Court finds that final

certification is not required before approving this settlement.") (citations

omitted).

The FLSA also "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. Jan. 13, 2009) (per curiam). In *Bonetti v. Embarq Management Company*, the district court analyzed its role in determining the fairness of a proposed settlement under the FLSA, and concluded:

> [I]f the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). Other courts in this district have indicated that when attorney's fees are negotiated separately from the payment to plaintiff(s), "an in depth analysis [of the reasonableness of the fees] is not necessary unless the unreasonableness is apparent from the face of the documents." *King v. My Online Neighborhood, Inc.*, No. 6:06-cv-435-Orl-22JGG, 2007 WL 737575, at *4 (M.D. Fla. Mar. 7, 2007); *Myers v.*

*Belleview Veterinary Hosp., Inc.*, No. 5:17-cv-369-Oc-41PRL, 2018 WL
4101001, at *2 n.4 (M.D. Fla. July 17, 2018) (report and recommendation
adopted by 2018 WL 4092118 (M.D. Fla. Aug. 27, 2018)).  In FLSA collective
actions, however, courts routinely approve as reasonable attorneys' fees
awards representing a reasonable percentage of a common fund.  *See, e.g.*,
*George*, 369 F. Supp. 3d at 1382 (N.D. Ga. 2019) (discussing relevant factors
"the Court should use to determine a reasonable percentage to award class
action counsel" and collecting cases in the Eleventh Circuit approving
attorneys' fees awards constituting "approximately one-third of a common
fund in FLSA wage and hour cases").

### III.  Analysis

#### A.    Certification

As an initial matter, the undersigned recommends that "final
certification or decertification is not necessary" for the Court's approval of the
Settlement Agreement, particularly where the parties were still completing
discovery when they agreed to settle, the parties have not filed dispositive
motions, and Defendants have not moved for decertification.  *See, e.g.*, *Huff v.
Bobcat N. Am., LLC*, Case No. 6:19-cv-861-Orl-37DCI, 2021 WL 268356, at *2
(M.D. Fla. Jan. 25, 2021) (report and recommendation adopted by 2021 WL
268355 (M.D. Fla. Jan. 27, 2021)) (noting that "the majority of approvals in

other FLSA collective action settlements in the Middle District of Florida did not require such action") (citations omitted).  Nevertheless, notwithstanding Defendant's arguments to the contrary regarding some of the Opt-in Plaintiffs, the undersigned recommends that for purposes of approving the Settlement Agreement, the Plaintiffs are similarly situated "[b]ased on the findings underlying the earlier conditional certification."  *See Adams v. Gilead Grp., LLC.*, 3:16-cv-1566-PDB, Doc. 107 (M.D. Fla. June 15, 2019); *see also Lockwood*, 2019 WL 2226126, at *9  ("Although arguably unnecessary for settlement approval, the plaintiffs are similarly situated, at least insofar as they are current and former independent contractors or employees of the defendants within the three years before [the relevant timeframe], had the same duties, and were paid in the same manner; and, in any event, the settlement amount is divided based on individual circumstances and provides all amounts allegedly due.").

## B.    The Settlement Agreement is Fair and Reasonable

The undersigned recommends that the Court approve the terms of the Settlement Agreement as fair and reasonable.  The parties represent that there are bona fide disputes, that they engaged in significant litigation spanning over three years, including extensive discovery and motions practice, and that their Settlement Agreement represents a fair and

20

equitable resolution of the claims at issue.  The parties also argue that the
settlement is fair, adequate, and reasonable, in light of the following six
factors: (1) there was no fraud or collusion behind the settlement; (2) the
settlement averts years of additional complex and expensive litigation; (3) the
factual record is sufficiently developed to enable class counsel to make a
reasoned judgment; (4) Plaintiffs would have faced obstacles to prevailing
and delay; (5) the benefits provided by the settlement are fair, adequate, and
reasonable compared to the range of possible recovery; and (6) the opinions of
experienced counsel for the parties, who, "having thoroughly vetted the legal,
factual, and evidentiary issues in this case, recommend approval" of the
Settlement Agreement, and the lack of "absent" class members bound by the
settlement.  (Doc. 118 at 15-21.)  The undersigned finds these arguments to
be persuasive.

Of note, once the Court approves the Settlement, the Claim Form will
be sent to the Opt-in Plaintiffs (406 collective members) and they will then
have an opportunity to participate in the settlement.  If an Opt-in Plaintiff
elects to participate, they will receive the pro-rated back wages and
liquidated damages amount as reflected in the corrected Damages Model -
Class Disbursements (Doc. 125-1)  Unless they return the Class Notice
within the required timeframe agreeing to participate in the Settlement

Agreement, an Opt-in Plaintiff will not be bound by the terms of the
Settlement Agreement.  Also, to the extent an Opt-in Plaintiff chooses not to
participate in the Settlement, they will not be prejudiced as their FLSA
claims will be equitably tolled.

In addition, the parties also recognize that "Plaintiffs will receive
overtime compensation under the agreement for workweeks during which
they may not have worked any overtime hours, were paid for overtime hours,
or may not be able to reasonably prove their off-the-clock claims." (*Id.* at 12.)
The parties also assert that the Settlement "value likely provides each Opt-in
close to, if not more than, their full estimated recovery for back wages and
liquidated damages based on this damages scenario without any further
delay." (*Id.* at 21.)

Based on the foregoing, the undersigned finds the parties' arguments to
be persuasive and recommends that the terms of the Settlement Agreement,
including the amount of Plaintiffs' Class Fund, which includes back wages
and liquidated damages, the pro-rated distribution amounts, and the
proposed schedule and mechanism for providing Opt-in Plaintiffs with notice
and opportunity to participate in the Settlement,[9] as well as distribution of

---

[9] The undersigned further recommends that the claims by the Opt-in
Plaintiffs who do not participate in the Settlement Agreement and the claims by the
Opt-in Plaintiffs who withdrew their consent-to-join be dismissed without prejudice.

22

funds to the participating Opt-in Plaintiffs, are fair and reasonable.

### 1. Additional Payment to Plaintiff Dozier

As previously noted, in *Johnson*, the Eleventh Circuit struck down a service award to a class representative.  975 F.3d at 1260.  In light of *Johnson*, some judges this District have deferred ruling on whether service awards are prohibited, including in the context of FLSA collective actions, "until *Johnson* is more settled."  *See, e.g.*, *Mosley v. Lozano Ins. Adjusters, Inc.*, No. 3:19-cv-379-J-32JRK, 2021 WL 293243, at *5 (M.D. Fla. Jan. 11, 2021) (report and recommendation adopted by 2021 WL 289031 (M.D. Fla. Jan. 28, 2021)) (citing *Harvey v. Hammel & Kaplan Co., LLC*, No. 3:19-cv-640-J-32JRK, 2020 WL 7138568, at *1 (M.D. Fla. Dec. 7, 2020)) ("The undersigned recommends deferring a ruling on the service award issue until *Johnson* is more settled, but going forward with approving the rest of the parties' requests.  The Court can and should retain jurisdiction to decide the service award issue in this circumstance.").  *But see Poblano v. Russell Cellular Inc.*, No. 8:19-cv-265-T-KKM-AAS, 2021 WL 2914985, at *1 (M.D. Fla. June 10, 2021) (noting that pursuant to *Johnson*, "it is blackletter law in the Eleventh Circuit that district courts cannot grant incentive awards to

---

*See Holmes v. Swissport Fueling, Inc.*, Case No. 2:16-cv-669-FtM-38MRM, 2019 WL 1370542, at *4, 8 (M.D. Fla. Mar. 11, 2019) (report and recommendation adopted by 2019 WL 1359636 (M.D. Fla. Mar. 26, 2019)).

named parties as part of a class-action settlement agreement" and finding that "because the parties' proposed settlement agreement include[d] a service-awards provision not clearly severable from the agreement, the Court [could not] find that the settlement [was] a fair and reasonable compromise of bona fide disputes of FLSA claims").

Here, the parties have agreed that Plaintiff Dozier will receive $7,500 as a service fee award and as consideration for his general release of claims,[10] if approved by the Court, and argue that *Johnson* is inapplicable in this case. Although service awards have been rejected in this district in light of *Johnson*, or withheld until *Johnson* is more settled, here, the $7,500 payment to Plaintiff Dozier also represents separate consideration for a general release, which the undersigned recommends does not render the Settlement Agreement unenforceable and provides the Court with a separate basis for approval of the payment. *See, e.g.*, *Buntin v. Square Foot Mgmt. Co., LLC*, No. 6:14-CV-1394-ORL-37, 2015 WL 3407866, at *2 (M.D. Fla. May 27, 2015) (citing *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350-52 (M.D. Fla. 2010)) (noting that general releases "can be permissible" where "plaintiffs

---

[10] In the Supplemental Memorandum, the parties also inform the Court that "[i]t was important for Defendant in this matter to receive a general release from named plaintiff, Oscar Dozier, because Mr. Dozier sued Defendant on three separate occasions."  (Doc. 130 at 7 (emphasis omitted).)

receive adequate compensation in addition to the entitled benefits under the

FLSA"). *But see Huff*, 2021 WL 268356, at *4 (recommending that a $10,000

payment to the representative plaintiff as consideration for executing a

general release did not affect the fairness of the FLSA settlement agreement

but noting that "it [was] somewhat troubling that this release could be

interpreted as a *de facto* service payment to a named plaintiff—a payment

that would be unsupported by on this record and perhaps improper").

In the alternative, the undersigned recommends deferring ruling on the

issue until *Johnson* is more settled.  *See, e.g.*, *Mosley v. Lozano Ins. Adjusters,*

*Inc.*, No. 3:19-CV-379-J-32JRK, 2021 WL 289031, at *1 (M.D. Fla. Jan. 28,

2021) (adopting the magistrate judge's report and recommendation, deferring

ruling on the issue of the service award and retaining jurisdiction pending a

final decision in *Johnson*, directing the parties to deposit the service award

into the Court's registry pending "the Court's determination of the service

award issue," and directing the parties to "notify the Court of the final

decision in *Johnson* within fourteen days of the same").

## 2. Claim Form and Limited Release

The undersigned also recommends that the Claim Form be approved as

it is simple and concise and just over one page in length.  (Doc. 118-1 at 25-26

("Class Member Opt-in Settlement Agreement and Release")).  Although the

Claim Form includes a release, it is a limited release related to wage and hour claims that could have been brought in this case.[11]  *See Colson v. Cableview Commc'ns of Jacksonville, Inc.*, No. 3:09-CV-850-J-34JRK, 2012 WL 12951999, at *4 (M.D. Fla. June 7, 2012) ("The Court notes that, under the Settlement Agreement and Release, Plaintiff and the class members are not providing Defendant with a general release, but instead are only releasing "any and all wage related claims which the Named Plaintiff or any Opt-in Plaintiff may have against Cableview.").   As such, the limited release also does not preclude approval of the Settlement Agreement.  *See id.*

### 3. Attorneys' Fees & Costs

In light of the parties' representations in the Joint Motion and the Supplemental Memorandum, the lack of objection, the results achieved, the skill level required, the contingent nature of the fee, the experience and reputation of the attorneys, the undesirability of the case, and all other

---

[11] The limited release specifically provides as follows:
In exchange for the consideration identified in paragraph 1, Employee waives and releases any and all wage and hour claims, causes of action, and demands he or she may have against Employer that were raised or could have been raised in the Action. A Non-Participating Opt-in Plaintiff, however, will not give up their rights to refile their claims against the Defendant, and their statutory claims under the FLSA will be considered equitably tolled from the date of the filing of their consent to join form to the due date of this Class Member Opt-in Settlement Agreement and Release.
(Doc. 118-1 at 25.)

relevant factors, the undersigned also recommends that the Court approve the attorneys' fees award in the amount of $500,000, constituting one-third (33%) of the common fund, as fair and reasonable. *Mosley*, 2021 WL 293243, at *4 (citing *George*, 369 F. Supp. 3d at 1356, 1376, 1382). Even if the parties did not negotiate the attorneys' fees separately and without regard to the amount paid to Plaintiffs, an award of attorneys' fees representing 33% of the Common Fund is reasonable. *See, e.g.*, *Freeman v. Trainingwheel Corp., LLC*, Case No. 2:19-cv-52-FtM-NPM, 2020 WL 7401488, at *3 (M.D. Fla. June 26, 2020) (approving settlement agreement in an FLSA collective action and finding an attorneys' fees award constituting 30% of a common fund reasonable where "the attorneys' fees were not agreed upon separately and without regard to the amount paid to [p]laintiffs"); *Mosley*, 2021 WL 293243 at *4 (approving attorneys' fees representing approximately one-third of the gross settlement amount); *Freeman*, 2020 WL 7401488, at *3 (M.D. Fla. June 26, 2020) (approving settlement award of attorneys' fees in FLSA collective action representing 30% of a common fund).

The Court need not conduct an in-depth analysis of the attorneys' fees award where, as here, "the total fee award sought is not patently unreasonable and the Defendant does not contest the reasonableness of the award." *Freeman*, 2020 WL 7401488, at *3. Additionally, the undersigned

also recommends that the requested award for reimbursement of costs in the amount of $22,826 is also fair and reasonable.

## IV.    Conclusion

The Settlement Agreement represents "a fair and reasonable resolution of a bona fide dispute" over provisions of the FLSA. *Lynn's Food*, 679 F.2d at 1355. Plaintiffs' recovery appears reasonable given the disputes in this case. Thus, the undersigned finds that the settlement reflects "a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* at 1354. As such, the undersigned recommends that the Joint Motion be granted to the extent discussed herein.

As requested by the parties, the undersigned also recommends that the Court retain jurisdiction to enforce the terms of the Settlement Agreement, as "retaining jurisdiction for a definite period is warranted under the circumstances[,]" including "the many plaintiffs" and "the desirability of addressing global issues in this case rather than in multiple new cases." *See Lockwood*, 2019 WL 2226126, at * 8 (citing *Hosier v. Mattress, Firm, Inc.*, No. 3:10-cv-294-J-32JRK, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (report and recommendation adopted by 2012 WL 2838610 (M.D. Fla. July 10, 2012)) ("To foster judicial economy, retaining jurisdiction may be

warranted, including if there are many plaintiffs."). The undersigned
recommends that the Court retain jurisdiction until September 1, 2022,
which is thirty days after the last payments scheduled for August 1, 2022.
*See Lockwood* at * 9 (recommending that the Court retain jurisdiction for a
limited period "which cautiously add[ed] a cushion to the last payment date").

Therefore, it is respectfully **RECOMMENDED** that:

1.    The Court **GRANT** the parties' Joint Motion (**Doc. 118**) to the
extent that:

      a.    The Court **APPROVE** the Settlement Agreement and
Release (**Doc. 118-1**), as it is a fair and reasonable compromise of
Plaintiffs' FLSA claims, including the Claim Form attached thereto
(Doc. 118-1 at 25-26).

      b.    The case be **DISMISSED with prejudice** as to the claims
by participating Opt-in Plaintiffs.

      c.    The case be **DISMISSED without prejudice** as to non-
participating Opt-in Plaintiffs, including the Opt-in Plaintiffs who
withdrew their consent-to-join forms.

2.    The Court retain jurisdiction for a limited time to enforce the
terms of the settlement agreement and that such period not extend beyond
September 1, 2022, absent further order of the Court.

3.     The Clerk of Court be **DIRECTED** to terminate any pending

motions and close the case.

**DONE AND ENTERED** in Jacksonville, Florida, on December 22,

2021.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Brian J. Davis
United States District Judge

Counsel of Record