UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

OSCAR DOZIER, individually on
behalf of himself and other
similarly situated employees,

      Plaintiff,

v.                              CASE NO. 3:18-cv-972-BJD-MCR

DBI SERVICES, LLC, a foreign
limited liability company,

      Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court on Non-Party DeAngelo Contracting

Services, LLC's Motion for Protective Order Quashing Subpoena Duces

Tecum and Incorporated Memorandum of Law ("DCS's Motion") (Doc. 165);

Plaintiff's Response in Opposition to Non-Party DeAngelo Contracting

Services, LLC's Motion for Protective Order (Doc. 167); Plaintiff's Motion to

Compel Sterling DBI to Comply with Subpoena Duces Tecum ("Plaintiff's

Motion") (Doc. 182); and Non-Party Sterling DBI Investor, LLC's Amended

Response in Opposition to Motion to Compel and Incorporated Memorandum

of Law (Doc. 185.)  For the reasons stated herein, DCS's Motion is

**GRANTED in part** and **DENIED in part**.  In addition, Plaintiff's Motion is

**GRANTED in part** and **DENIED in part.**

## I.    Background[1]

In 1978, Paul D. DeAngelo and his brother Neal DeAngelo founded a residential lawn care business in Pennsylvania, which was formally incorporated in 1985 as Lawn Specialties, Inc., and renamed in 1986 to DeAngelo Brothers, Inc.  (Doc. 165-8 at 2.)   In 2007, the DeAngelo brothers formed a separate entity, DBi Services, LLC, to provide performance based bundled-services transportation and asset maintenance contract services. (*Id*. at 3.)  In August 2016, the brothers sold DBi to Sterling Partners[2], a private equity firm.  (*Id*.)   As part of the sale, the brothers resigned from all officer roles and other management positions within DBi, and new officers were named by Sterling Partners. (*Id*.)

Further as a result of the Sterling sale, a new parent entity for DBi was created, DBi Parent, LLC ("New Parent").  (*Id*.)  The brothers retained an interest in New Parent through an entity named DBi Intermediate Holding,

---

[1] Because the posture of this case has been discussed at length in previous orders, the Court declines to provide another recitation of that information. (*See* Docs. 154, 158.)  However, because this Order relates to two non-parties, the Court takes the time to provide background information on their alleged relation to this case. This background information is primarily derived from the Declaration of Paul D. DeAngelo, which he declared was true and correct pursuant to 28 U.S.C. 1746, under penalty of perjury. (Doc 165-8 at 8.)

[2] The record indicates that Mr. DeAngelo was likely conflating Sterling Partners Equity Advisors, LLC, and Sterling DBI Investor, LLC.  (*See* Docs. 185-3; 185 at 1-2.)

2

Inc. (*Id.*) Paul DeAngelo also personally retained an interest in New Parent. (*Id.*) While Neal DeAngelo stepped away from DBi after the sale to Sterling, Paul DeAngelo, however, agreed to help transition the DBi business to Sterling's management by entering into a 5-year consulting agreement with Sterling and even served as one of seven (7) members on the New Parent's Board of Directors. (*Id.* at 4.) Under Sterling's ownership and management, DBi increased its operation, which included expanding the workforce to approximately 2,500 employees and $450 million dollars in revenue by 2019. (*Id.*) However, DBi began experiencing financial strife likely in part due to the leveraged expansion process. (*Id.*) Partners Group, another private equity firm that was already in the capital structure, subsequently took control of DBi, through a financial restructuring. (*Id.*)

Up until October 2022, Paul D'Angelo still retained minority non-controlling interest in the original DBi parent company and the New Parent company. (*See id.* at 5.) He also continued to serve as one of the seven Board of Directors of the New Parent company until October of 2020. (*Id.*) And Mr. D'Angelo had a consulting agreement with DBi that did not lapse until July of 2021. (*Id.*) In March of 2020, while still on the Board of Directors at DBi and serving as a consultant with DBi, Paul D'Angelo and his sons formed Seven Isles Capital Contracting LLC, and shortly thereafter renamed the

new company D'Angelo Contracting Services, LLC ("DCS").  (*Id*.)  A few months later, in May and June of 2020, DCS began purchasing assets from DBi.  (*Id*.)

Moving into 2021, DBi continued experiencing financial issues, which led to a refinancing and PNC Bank was brought in as DBi's new secured lender.  (*Id*. at 6.)  Even after the refinancing, DBi's financial situation worsened.  (*Id*.)  By October 2021, DBi terminated nearly all of its 2,500 employees and permanently shut down its business operations.  (*Id*.)  During the same time period, PNC conducted a collateral valuation and began contacting potential buyers, which included DCS.  (*Id*.)  However, before DCS made any deal with DBi, PNC bank foreclosed on DBi and took control of its assets.  (*Id*. at 7.)  Nonetheless, following the foreclosure, and just seven weeks after DBi shut down, DCS purchased DBi's U.S. fleet.  (*Id*.)  In conjunction with the purchase of assets, DCS placed bids for work and signed new contracts with many of DBi's former customers.  (*Id*.)  DCS also elected to hire a number of former employees of DBi.  (*Id*.)

### A. Subpoena to Non-Party Sterling

On March 20, 2023, Plaintiff filed his Motion to Compel Sterling DBI ("Sterling") to Comply with Subpoena Duces Tecum.  (Doc. 182.)  Plaintiff claims he is seeking discovery from Sterling "to ascertain what happened to

DBi's assets and to identify all plausible successors in interest." (*Id.* at 2.) According to Plaintiff, "the categories of documents requested in the Sterling [s]ubpoena are designed to establish, *inter alia*, the assets, liabilities, ownership, employees, and clientele of DBi during the pendency of this action." (*Id.*)  Plaintiff further adds that "as the entity that owned and controlled DBi and oversaw a vast expansion of its business activities following its acquisition, Sterling DBi is an obvious target of Plaintiff's document requests." (*Id.*)

Sterling disagrees with Plaintiff and argues that "[f]rom 2019 through the shutdown of DBI's operations in October 2021, Sterling was an indirect minority equityholder [sic] with no control or involvement in the day-to-day operations of DBI, which was overseen and managed by DBI's own management team." (Doc. 185 at 1-2.)  And "Sterling maintained a single seat on DBI's seven person board of directors (the "Board") and had no ability to control the decision-making of the Board or otherwise take independent action to control DBI.  Sterling had no other voting control." (*Id.* at 2.)

Sterling further asserts that it "is entitled to an order denying the Motion to Compel to respond to the [s]ubpoena because the requests for documents create an undue burden and expense on a non-party." ( *Id.* at 3.) Moreover, "the [s]ubpoena grossly exceeds the scope of permissible post-

judgment discovery a party may direct to a non-party because it targets information and materials far beyond the identification and location of assets of Defendant available to satisfy the Judgment." (*Id.*)

## B. Subpoena to Non-Party DCS

On August 17, 2022, Plaintiff served DeAngelo Contracting Services, LLC ("DCS") with a subpoena seeking a deposition of DCS's corporate representative along with the production of relevant documents. DCS argues it "is entitled to an order quashing the [s]ubpoena and protecting it from further undue burden, expense and harassment resulting from Plaintiff's improper discovery efforts." (Doc. 165 at 2.) For support, DCS avers that it is a "legal entity separate and discrete from defendant/judgment debtor DBI Services, LLC ('DBI' or 'Defendant')." (*Id.*) Moreover, "DCS is not presently nor was it at any time, an affiliate of DBI; does not control or have any interest in DBI; and is not responsible for DBI's debts and liabilities as a matter of fact or under any theory of law." (*Id.*) On this basis, DCS explains that the subpoena "exceeds the scope of permissible post-judgment discovery a party may direct to a non-party because it targets information and materials far beyond the identification and location of assets of the Defendant available to satisfy the Judgment." (*Id.*) Therefore, "absent a protective order, DCS is likely to suffer continued harassment by Plaintiff in his efforts

to render DCS liable for his [j]udgment against DBI." (*Id.* at 3.)

Conversely, Plaintiff argues "[a] successor-in-interest has arisen since the announcement of DBi's closing." (Doc. 167 at 3.) Underlying Plaintiff's argument is the position that "DCS–another family company formed by Paul DeAngelo and his sons–hired back at least 260 of the employees DBi laid off, and purchased 'substantially all of DBi's assets' in a 'multi-million dollar deal.'" (*Id.*) Accordingly, Plaintiff claims he "is entitled to discovery from DCS to confirm that DCS is the proper target of the Plaintiff's efforts to collect on the Judgment." (*Id.*) Ultimately, Plaintiff's subpoena seeks "a deposition of . . . DCS's corporate representative along with the production of relevant documents." (*Id.* at 4.) Moreover, Plaintiff contends

> "[t]hese requests are unequivocally intended to assist the Plaintiff in evaluating the extent to which DCS is (i) a successor of DBi and therefore liable for the Judgment, (ii) the recipient of transfers avoidable under the Uniform Fraudulent Transfer Act, and/or (iii) in possession of DBi property that could be applied to satisfy the Judgment.

(*Id.*)

At the center of the subpoena issue is a Secured Party Sale Agreement dated December 13, 2022 (the "Sale Agreement") between DCS and PNC Bank. DCS contends that it enclosed a copy of the Sale Agreement to confirm to Plaintiff that DCS did not acquire any assets directly from DBi. Moreover,

DCS argues that the "Sale Agreement discloses the specific assets DCS acquired from PNC Bank through a duly conducted foreclosure sale, confirming that DCS did not acquire DBI's liabilities or obligations to Plaintiff and refuting any argument that DCS and DBI engaged in a *de facto* merger, mere continuation, or fraudulent transfer." (Doc. 165 at 18.) DCS maintains that production of the Sale Agreement is sufficient to satisfy the subpoena and that no further response is required. (*Id.*) For added support, DCS also says "the nature of DCS'[s] business when it was formed was different than Defendant's operations, and it was formed nearly two years prior to Defendant's closure." (*Id.*) And "during the relevant time period DCS and Defendant shared no common management." (*Id.*)

Despite DCS's claims about the Purchase Sale Agreement, Plaintiff contends that the Sale Agreement further highlights the close relationship between DCS and DBi thereby warranting the third-party subpoena. For instance, Plaintiff claims "the Purported Sale Agreement provides that PNC is selling DBI's rights and interests in the Purchased Assets; not PNC's interest." (Doc. 167 at 9.) Additionally, under the Agreement, "DCS was also assigned a certain number of DBi customer contracts." (*Id.* at 10.) And more significantly, "the Purported Sale Agreement provides that DCS acquired $31,750,000 worth of assets from DBi." (*Id.* at 16.)

## II.     Standard

Federal Rule of Civil Procedure 69(a) addresses discovery related to the execution of money judgments and states in pertinent part:

> ***(2) Obtaining Discovery.*** In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located.

(emphasis added). "Under this Rule, discovery may be had of the judgment debtor or third persons without separate suit and, if discovery is pursued under the federal rules . . . all the discovery devices of the Rules may be used as in the progress of the action." *Caisson Corp v. Cnty W. Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974).  "Rule 69 allows for broad discovery against the judgment debtor." *Bel Trading & Consulting, Ltd. v. KNM Worldwide Services, LLC*, No. 14–22313–MC, 2014 WL 3865952, *2 (S.D. Fla. Aug. 6, 2014) (citing 12 Wright & Miller, Federal Practice and Procedure § 3014 (2d ed.2013)).  While the scope of discovery directed at judgment debtors is broad, third parties are generally only examined "as to the judgment debtor's assets and are not required to disclose their own assets." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Van Waeyenberghe*, 148 F.R.D. 256, 257 (N.D. Ind. 1993).

However, third-parties' assets may be discoverable upon a "heightened

showing of necessity and relevance," meaning "at least some demonstration of concealed or fraudulent transfers or alter ego relationship with the judgment debtor," is generally warranted. *Trustees of Amalgamated Ins. Fund v. Jordan Mfg. Corp.*, No. 07-21301, 2008 WL 343132, at *1 (S.D. Fla. Feb. 5, 2008) (quoting *Uniden Corp. of America v. Duce Trading Comp., Ltd.*, 1993 WL 286102, 1 (W.D.N.Y. 1993)); *see also 2245 Venetian Court Bldg. 4, Inc. v. Harrison*, 149 So. 3d 1176, 1179 (Fla. 2d DCA 2014) ("'[W]e have . . . held that a nonparty may be subject to postjudgment discovery where the "judgment creditor can provide a good reason and close link between the unrelated entity and the judgment debtor.'") (quoting *Gen. Elec. Capital Corp. v. Nunziata*, 124 So. 3d 940, 942 (Fla. 2d DCA 2013)); *Trustees of N. Florida Operating Engineers Health & Welfare Fund v. Lane Crane Serv., Inc.*, 148 F.R.D. 662, 664 (M.D. Fla. 1993) ("When the ground for the discovery is an alleged alter ego relationship with the judgment debtor, there must be facts before the Court to show the basis for the allegation.") (citing *Strick Corp. v. Thai Teak Products Comp, Ltd.*, 493 F. Supp. 1210, 1218 (E.D. Pa. 1980)).

Rule 1.560, Florida Rules of Civil Procedure, tracks the language of Rule 69(a) and provides: "In aid of a judgment, decree, or execution the judgment creditor or the successor in interest, when the interest appears of record, may obtain discovery from any person, including the judgment debtor

in the manner provided in these rules." (emphasis added).

Similarly, Rule 69(a)(1) of the Federal Rules of Civil Procedure provides that proceedings supplementary in aid of judgment or execution "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). Florida Statutes § 56.29 provides the means by which a judgment holder is entitled to proceeding supplementary and also explicitly provides that the Court "may order any property of the judgment debtor, not exempt from execution, in the hands of any person or due to the judgment debtor to be applied toward the satisfaction of the judgment debt." Fla. Stat. § 56.29(5). "It has been held, however, that Rule 1.560, Florida Rules of Civil Procedure, which follows almost verbatim language contained in Rule 69(a), [Federal Rules of Civil Procedure], is a separate basis for obtaining discovery in aid of execution." *Lane Crane Serv., Inc.*, 148 F.R.D. at 663. (citing *Nobles v. Ring Power Corp.*, 531 So.2d 1023, 1025 (Fla. 1st DCA 1988) (per curiam); *Conrad v. McMechen*, 338 So.2d 1306, 1307 (Fla. 4th DCA 1976)).

> Indeed, it has been suggested: "[T]he judgment creditor might find it convenient to resort first to the discovery procedure for the purposes of determining whether any third persons hold property belonging to the [judgment] debtor. Once this information is obtained, and it is determined that the third parties refuse to allow the property to be applied to the judgment creditor's judgment, he may then commence supplementary proceedings in

aid of execution."

*Id.* (citing *Conrad*, 338 So.2d at 1307).  Accordingly, the Court in *Lane Crane Serv., Inc.*, held that the plaintiffs in that case could appropriately seek to obtain discovery from the non-parties pursuant to either Rule 69(a), Federal Rules of Civil Procedure, or Rule 1.560, Florida Rules of Civil Procedure, to determine whether the non-parties held property belonging to the judgment debtor.  *Id.* at 664.  "Subsequently, they may move to implead [the non-parties], if appropriate.  Plaintiffs can hardly be expected to make the prima facie showing required to implead [the non-parties] before having access to discovery which would allow them to determine if such a showing can be made." *Id.*

Importantly, however, post-judgment discovery is not without limits.  A party or person from whom discovery is sought may seek a protective order protecting them from "annoyance, embarrassment, oppression, or undue burden or expense[.]"  Fed. R. Civ. P. 26(c)(1).  The party or person moving for a protective order must show "good cause" exists for the court to issue such an order.  *Id.*  A showing of good cause "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."  *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978).  In addition to showing good cause, the moving party must show that, on

balance, its interest in seeking the protective order outweighs the interests of the opposing party. *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989).

A party or person subject to a subpoena may also seek protection pursuant to Federal Rule of Civil Procedure 45. Relevant here, a court must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). The party moving under this provision bears the burden of demonstrating that the subpoena subjects him or her to undue burden. *See Dig. Assurance Certification, LLC v. Pendolino*, No. 6:17-cv-72-Orl-41TBS, 2017 WL 4342316, at *9 (M.D. Fla. Sept. 29, 2017) (citations omitted). "Claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome." *Eastwood Enters., LLC v. Farha*, No. 8:07-cv-1940-T-33EAJ, 2010 WL 11508180, at *4 (M.D. Fla. Apr. 26, 2010) (quoting *Bank of Mongolia v. M&P Global Fin. Servs.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009)).

## III. Discussion

### A. Necessity and Relevancy

The key point of inquiry in discovery matters related to non-parties is relevancy. In cases involving post judgment discovery matters, the judgment

creditor can establish relevancy and necessity by showing a close link between the non-party and the judgment debtor. *See Harrison*, 149 So. 3d 1176, 1179 (concluding for purposes of serving discovery on a nonparty "the requesting party must only provide a 'good reason and close link' between the nonparty and judgment debtor."). Two cases, in particular, are instructive on how courts consider a close link between a nonparty and a judgment debtor.

In *Democratic Republic of the Congo v. Air Cap. Grp., LLC,* the court held that the record demonstrated that the non-parties and the debtors shared a closed relationship, entitling the judgment creditors to discovery based on alter ego liability because the non-parties and debtors shared the same principals, places of business, and registered agents. No. 12-CIV-20607, 2018 WL 324976, at *3 (S.D. Fla. Jan. 8, 2018). Moreover, the debtors even formed the non-parties' companies. *Id.* Based on these similarities, in addition to the allegation that the debtors transferred assets to the alter egos, the court held that the judgment creditor satisfied the burden of a heightened showing of necessity and relevance. *Id.*

Similarly, in *Lane Crane Serv., Inc.,* the court held that a judgment creditor established a "close link" between the non-parties and judgment debtor under an alter ego theory and was therefore entitled, to seek discovery from the nonparty. The court relied on the fact that: (1) the judgment debtor

14

became defunct within one month of the formation of the new company; (2)

the son of the principal of the debtor company was the sole owner of the new

company; (3) the debtor company and the new company utilized the same

address; (4) the debtor company and the new company engaged in the same

kind of business; and (5) the new company employed some of the debtor

company's former employees.  148 F.R.D. at 664.  The court held that while

any one of those factors, standing alone, might not be sufficient to make the

requisite showing, the combination of those factors provided a basis for the

creditor's allegation of an alter ego relationship sufficient to justify the

requested discovery.  *Id*.

Here, the undersigned finds that Plaintiff has established a "close link"

and sufficient threshold showing of the necessity and relevancy of the

discovery sought from the non-parties.  First, as it relates to Sterling,

Plaintiff has established that Sterling may have owned and controlled DBi

during the pendency of this action and more importantly at a period of time

when DBi transferred all of its assets.  (Doc. 165-8 at 4.)  Therefore, as a

general matter, the subpoena to Sterling is proper. *See Tire Stickers, LLC v.

Scuderia Automobili*, No. 6:19-MC-2-ORL-41LRH, 2020 WL 13597421, at *3

(M.D. Fla. Sept. 18, 2020) ("Plaintiff elected to subpoena [a third-party],

which is both permissible under Rule 69(a)(2) and reasonable since [the

third-party] owned and/or operated one of the judgment debtors.")  At the very least, by its own admission, Sterling was an equity holder in DBi and held a seat on DBi's board during the pendency of this action.  (Doc. 185 at 12.)  The undersigned is satisfied that the combination of these factors is sufficient to establish a close link.

Second, as it relates to DCS, Plaintiff has established sufficient grounds to support an alter ego, successor in interest theory, or fraudulent transfer theory by virtue of the fact that: (1) Paul DeAngelo who started and owned an interest in the Debtor Company DBi is also a principal owner in DCS; (2) Paul DeAngelo retained a contractual consulting relationship with the debtor through July 2021, while operating DCS; (3) DCS purchased DBi's U.S. fleet just seven weeks after DBi shut down; (4) DCS acquired $31,750,000 worth of DBi's assets; (5) DCS placed bids for work and signed new contracts with many of DBi's former customers; (6) and hired a number of former employees of DBi.

### B. Objections[3]

#### i. DCS

As an initial matter, to the extent DCS objects to the subpoena on the

---

[3] The undersigned declines to address in detail Plaintiff's argument that the non-parties waived their objections. This argument is without merit.

grounds that Plaintiff will not ultimately prevail on a successor in interest or alternate ego theory—that argument is misplaced.  At this stage, the Court must simply determine whether the information requested is discoverable, not whether the assets of DCS may actually be levied to pay the judgment against DBi.  *See A&F Bahamas, LLC v. World Venture Grp., Inc.*, No. CV 17-8523 VAP (SS), 2018 WL 5961297, at *8 (C.D. Cal. Oct. 19, 2018); *see also Mountain Dudes, LLC v. Split Rock, Inc.*, 2013 WL 5435707, at *4 (D. Utah Sept. 29, 2013) ("Plaintiff is not seeking a declaration that the assets at issue are, in fact, subject to judgment. Rather, Plaintiff seeks supplemental proceedings to help it determine what assets, if any, might be available to aid in collecting on its judgment. The determination as to whether such assets are subject to judgment can only be made after the existence of Defendant's assets and the extent of any transfers are known.").  Furthermore, as the court in *Lane Services, Inc.*, reasoned, a creditor "can hardly be expected to make the prima facie showing required to implead [the nonparties in supplementary proceedings] before having access to discovery which would allow them to determine if such a showing can be made." *Lane Services, Inc.*, 148 F.R.D. at 664.

     While DCS's relevancy claims are unfounded, the Court finds merit in its undue burden claim.  DCS points out Plaintiff's subpoena "seeks DCS's

compliance with ninety-nine (99) separate document and depositional requests." (Doc. 165 at 16.)  DCS argues that "the sheer volume of requests alone imposes a disproportional and undue burden on DCS." (*Id*. at 14.)  To demonstrate, DCS explains "the 'general tenor' of the requests in the [s]ubpoena at issue focus heavily and broadly on DCS's internal matters, including but not limited to all of DCS's: articles, bylaws, meeting minutes, formal ownership documents, business permits and licenses, monthly, quarterly, annual and other periodic financial statements, contracts and agreements with non-parties, payments made to non-parties, state and federal tax returns, identities of all employees, creditors, and customer accounts, and so on – starting from as early as DCS's 'inception.'" (*Id*. at 16.)

Moreover,  DCS alleges that its records are maintained in hard copy and electrotonically.  (165-8 at 7.)  DCS estimates that its hard copy records include thousands of pages, and its digital records include at least 26 terabytes of data.  (*Id*.)  In his Declaration, Mr. DeAngelo contends that from a data perspective, 26 terabytes of data is roughly equivalent to between 1.3 and 1.95 billion individual pages.  (*Id*.)  Mr. DeAngelo further asserts that given the breadth of the subpoena, DCS employees and counsel would need to spend several hundred hours at the least and potentially several thousand dollars to be fully compliant with the subpoena.  (*Id*. at 8-9.)  Ultimately, the

combination of time and cost would impose a substantial and significant burden on DCS and its employees. (*Id*.)

In light of Mr. DeAngelo's Declaration, the undersigned is satisfied that DCS has met its burden warranting the modification or quashing of the subpoena. Plaintiff's arguments to the contrary are unavailing. To illustrate, by Plaintiff's own admission many of the requests in the subpoena overlap "and most documentation will be responsive to multiple separately-written requests." (Doc. 167 at 20.) This is a sufficient reason alone to quash or modify the subpoena. *See* Fed R. Civ. P. 26(b)(2)(C). Furthermore, Plaintiff's representation that "DCS offers no support regarding any purported undue burden it would suffer in responding to the [s]ubpoena. Instead, DCS relies upon its flawed contention that the document requests somehow exceed the scope of what is obtainable in discovery from DCS" is ineffectual. (Doc. 167 at 12.)

In balancing the interests of Plaintiff and DCS, the Court finds that DCS has failed to establish good cause to justify the Court entering a protective order generally as to all the inquiries of the subpoena. As previously stated, Plaintiff has shown that there is relevancy and necessity given its presentation of facts which establish a foundation for a successor in interest claim or, in the alternative, an alternate ego claim. However, the

19

Court does find that DCS has established the requisite showing of undue burden warranting the modification of the subpoena. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("Generally, modification of a subpoena is preferable to quashing it outright.")

At this point, the third-party subpoena to DCS should be limited to information regarding assets of DBi and transfers between DBi and DCS without unnecessarily prying into all of DCS's business dealings. Accordingly, the Court grants DCS's Motion to the extent that DCS need only respond to the following:

1) **Corporate Representative Ares of Inquiry**: Nos. 4, 7, 8, 9, 15, 16, 19, 20, 21, 23, 26, 27, 29, 30, 31, 32, 33, 34; and

2) **Categories of Documents to be Produced:** Nos. 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 19, 20, 21, 26, 27, 36, 37, 38, 39, 40,41, 42, 46, 47, 48, 49, 54, 55, 61, 62, 63, 64, 65.

### ii.  Sterling

The undersigned agrees with Plaintiff that Sterling has not met its heavy burden of demonstrating how the requests are unduly burdensome.  By and large, Sterling simply made conclusory statements in its Motion arguing that the subpoena is unduly burdensome but did not articulate its theory of how it would be unduly burdened if required to answer the subpoena.

Specifically, Sterling does not provide any evidence, such as an affidavit or declaration, in support of this claim.  This is reason alone to reject its claim of undue burden.  *See Eastwood Enters., LLC v. Farha*, No. 8:07-cv-1940-T-33EAJ, 2010 WL 11508180, at *4 (M.D. Fla. Apr. 26, 2010) ("Claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome."); *See Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364, 1376 (S.D. Fla. 2012) ("A party objecting on these grounds must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome.")

However, there are some legitimate concerns that Sterling mentions that the Undersigned deems necessary to address.  First, Sterling points out that the subpoena requests documents related to DCS including but not limited to all of DCS's: articles, bylaws, meeting minutes formal ownership documents, etc.  Unlike its relationship with DBi as an equity holder and alleged previous manager and operator, Sterling does not seem to have any real relationship to DCS.  Therefore, the subpoena to Sterling should be modified to remove any inquiry related to documents and internal affairs of DCS.  On the other hand, given the close relationship between DBi and Sterling, the Court finds that area of inquiry may remain intact.  The Court

21

further notes that it may not compel production of documents and information that do not exist or is not in the control of Sterling. Thus, the Court finds it sufficient and agrees with Plaintiff that Sterling should respond by confirming it does not have the sought-after documents and information wherever applicable.

Accordingly, the Court grants Plaintiff's Motion, however, the subpoena is modified to the extent that Sterling need only provide the corresponding documentation for the following:

**Categories of Documents to be Produced:** Nos. 2, 3, 4, 5, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27, 34, 37, 38, 39, 44, 45, 46, 50, 58, 59, 61, 62, 63.

As a final matter, recognizing the confidential nature of the financial and business information sought, the Court will subject the use of the produced information to certain protections. Plaintiff shall use the financial information only for purposes of this litigation and shall return it to the respective non-party at the conclusion of the litigation. Additionally, Plaintiff shall not share this information with anyone other than his counsel, litigation staff, and any experts employed for the purpose of reviewing the information. All individuals reviewing this information under these terms shall comply with the confidentiality requirements and not disclose the

22

information to anyone for any purposes other than as described herein.
Finally, should any of the confidential information need to be filed in support
of or in opposition to a motion in this case, it shall be filed electronically
under seal using CM/ECF.

Accordingly, it is **ORDERED**:

1.     Non-Party DeAngelo Contracting Services, LLC's Motion for
Protective Order Quashing Subpoena Duces Tecum and Incorporated
Memorandum of Law (**Doc. 165**) is **GRANTED in part** and **DENIED in
part** as stated in this Order.

2.     Subject to the limitation identified in this Order, DeAngelo
Contracting Services, LLC, shall produce the documents which Plaintiff
requested in the subpoena *duces tecum* within forty-five (45) days from the
date of this Order.

3.     A deposition of DeAngelo Contracting Services, LLC's corporate
representative shall be completed by video or other reasonable means no
later than September 29, 2023.

4.     Plaintiff's Motion to Compel Sterling DBI to Comply with Subpoena
Duces Tecum **(Doc. 182) is GRANTED in part** and **DENIED in part** as
stated in this Order.

5.     Subject to the limitation identified in this Order, Sterling DBI

23

Investor, LLC, shall produce the documents which Plaintiff requested in the

subpoena duces tecum within forty-five (45) days from the date of this Order.

**DONE AND ORDERED** at Jacksonville, Florida, on August 25, 2023.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record
Any Unrepresented  Party

24